SNOW ET UX. *v.* COMMISSIONER OF INTERNAL
REVENUE

No. 73-641. Argued April 16, 1974—Decided May 13, 1974

DOUGLAS, J., delivered the opinion of the Court, in which all Members joined except STEWART, J., who took no part in the consideration or decision of the case.

*Burgess L. Doan* argued the cause and filed briefs for petitioners.

*Stuart A. Smith* argued the cause for respondent. With him on the brief were *Solicitor General Bork,*

*Assistant Attorney General Crampton, Bennet N. Hollander,* and *Jane M. Edmisten.** 

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Section 174 (a)(·1) of the Internal Revenue Code of 1954, 26 U. S. C. § 174 (a)(1), allows a taxpayer to take as a deduction "experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account." Petitioner Edwin A. Snow (hereafter petitioner) was disallowed as a deduction his distributive share of the net operating loss of a partnership, Burns Investment Company, for the taxable year 1966. The United States Tax Court sustained the Commissioner, 58 T. C. 585. The Court of Appeals for the Sixth Circuit affirmed, 482 F. 2d 1029 (1973). The case is here on a writ of certiorari because of an apparent conflict between that court and the Fourth Circuit in *Cleveland* v. *Commissioner,* 297 F. 2d 169 (1961).

Petitioner was a limited partner in Burns, having contributed $10,000 for a four-percent interest in Burns. The general partner was one Trott who had previously formed two other limited partnerships, one called Echo, to develop a telephone answering device and the other Courier, to develop an electronic tape recorder. Petitioner had become a limited partner in each of these other partnerships.[1]

---

*\*Charles H. Phillips* and *Ronald L. Blanc, pro se,* filed a brief as *amici curiae.*

[1] Both Echo and Courier claimed research and development expenses in 1965 and 1966; and they were not challenged by the Commissioner, apparently because their products were in a more

Burns was formed to develop "a special purpose incinerator for the consumer and industrial markets." Trott was the inventor and had conceived of this idea in 1964 and between then and 1966 had made a number of prototypes. His patent counsel had told him in 1965 that several features of the burner were in his view patentable but in 1966 advised him that the incinerator as a whole had not been sufficiently "reduced to practice" in order to develop it into a marketable product. At that point Trott formed Burns, petitioner putting up part of the capital. Thereafter various models of the burner were built and tested.

During 1966 Burns reported no sales of the incinerator or any other product but expectations were high; and Trott was giving about one-third of his time to the project, an outside engineering firm doing the shopwork.[2]

Trott obtained a patent on the incinerator in 1970, and it is currently being produced and marketed under the name Trash-Away.[3]

Section 174 was enacted in 1954 to dilute some of the conception of "ordinary and necessary" business expenses under § 162 (a) (then § 23 (a)(1) of the Internal Revenue Code of 1939) adumbrated by Mr. Justice Frankfurter in a concurring opinion in *Deputy* v. *Du Pont,* 308 U. S. 488, 499 (1940), where he said that

advanced stage of development and were available for sale or licensing.

[2] Treasury Regulation § 1.174–2 (a)(2) provides: "The provisions of this section apply not only to costs paid or incurred by the taxpayer for research or experimentation undertaken directly by him but also to expenditures paid or incurred for research or experimentation carried on in his behalf by another person or organization (such as . . . [an] engineering company, or similar contractor). . . ."

[3] Prior to 1970 Burns was incorporated and it produces and markets Trash-Away, petitioner being its Chairman of the Board.

the section in question (old § 23 (a)) "involves holding one's self out to others as engaged in the selling of goods or services." The words "trade or business" appear, however, in about 60 different sections of the 1954 Act.[4] Those other sections are not helpful here because Congress wrote into § 174 (a)(1) "in connection with," and § 162 (a) is more narrowly written than is § 174, allowing "a deduction" of "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business." That and other sections are not helpful here.

The legislative history makes fairly clear the reasons. Established firms with ongoing business had continuous programs of research quite unlike small or pioneering business enterprises.[5] Mr. Reed of New York, Chairman of the House Committee on Ways and Means, made the point even more explicit when he addressed the House on the bill: [6]

> "Present law contains no statutory provision dealing expressly with the deduction of these expenses. The result has been confusion and uncertainty. Very often, under present law small businesses which are developing new products and do not have established research departments are not allowed to deduct these expenses despite the fact that their large and well-established competitors can obtain the deduction. . . . This provision will greatly stimulate the search for new products and new inventions upon which the future economic and military strength of our Nation depends. *It will be particularly valuable*

---

[4] Saunders, "Trade or Business," Its Meaning Under the Internal Revenue Code, U. So. Cal. 12th Inst. on Fed. Tax. 693 (1960).

[5] Hearings on H. R. 8300 before the Senate Committee on Finance, 83d Cong., 2d Sess., pt. 1, p. 105.

[6] 100 Cong. Rec. 3425 (1954).

*to small and growing businesses."* (Emphasis added.)

Congress may at times in its wisdom discriminate taxwise between various kinds of business, between old and oncoming business and the like. But we would defeat the congressional purpose somewhat to equalize the tax benefits of the ongoing companies and those that are upcoming and about to reach the market by perpetuating the discrimination created below and urged upon us here.

We read § 174 as did the Court of Appeals for the Fourth Circuit in *Cleveland* "to encourage expenditure for research and experimentation." 297 F. 2d, at 173. That incentive is embedded in § 174 because of "in connection with," making irrelevant whether petitioners were rich or poor.

We are invited to explore the treatment of "hobbylosses" under § 183. But that is far afield of the present inquiry for it is clear that in this case under § 174 the profit motive was the sole drive of the venture.

*Reversed.*

Mr. Justice Stewart took no part in the consideration or decision of this case.