THEODORE S. REINKE and MELANIE O. REINKE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reinke v. Commissioner
Docket No. 8791-76.
United States Tax Court
T.C. Memo 1981-120; 1981 Tax Ct. Memo LEXIS 626; 41 T.C.M. (CCH) 1100; T.C.M. (RIA) 81120; March 16, 1981. *626 Ps transferred funds to S, a corporation of which H was a shareholder, and claimed a deduction for such transfers as a research and experimental expense carried on in Ps' behalf. Held, such transfer was a nondeductible contribution to capital and not reimbursement to S for research carried on in Ps' behalf. Sec. 174(a)(1), I.R.C. 1954; sec. 1.174-2(a)(2), Income Tax Regs.
Vernon E. Robbins, for the petitioners. Eugene J. Wien, for the respondent. SIMPSON
MEMORANDUM OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 3,614.80 in the petitioners' Federal income tax for 1974. After concessions by the petitioners, the sole issue for decision is whether payments made by Mr. Reinke to a corporation of which he was a shareholder are deductible by the petitioners as *628 a research and experimental expenditure. All of the facts have been stipulated, and those facts are so found. The petitioners, Theodore S. and Melanie O. Reinke, husband and wife, maintained their legal residence in Rehoboth Beach, Del., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1974 with the Internal Revenue Service. Since 1945, Mr. Reinke had been associated with Crisfield Dehydrating Co. (Crisfield), an electing small business corporation, as both an employee and 50-percent shareholder. During 1974, Crisfield's principal business activity was the drying and milling of protein wastes obtained from the seafood industry and converting such wastes into meal for the feed industry. During 1974, Mr. Reinke was also employed by the Crab Pot, Inc., a restaurant of which he was a 50-percent owner. Prior to 1974, Mr. Reinke was issued three patents for crab-processing machines and one patent for an oyster-shucking machine. On their 1974 return, the petitioners reported royalty income of $ 120 from a "crab-processing patent." By agreement dated September 27, 1971, Mr. Reinke, J. Clayton Brooks, Calvert B.Tolley, Nellie *629 H. Rodgers, William P. Hunt, and Richard P. Wenstrom agreed to reactivate Sea Savory, Inc. (Sea Savory), an existing but inactive Maryland corporation owned by Mr. Reinke and Mr. Brooks, for the purpose of developing the potential for the Wenstrom crab-Shaker, a crab picking machine. Such agreement provided in part: PROPOSAL TO WM. P HUNT, MRS. NELLIE RODGERS, AND DICK WENSTROM RE FORMING A NEW CORPORATION TO DEVELOP THE POTENTIAL OF THE WENSTRUM [sic] CRAB*SHAKER AND TO DEVISE AND DEVELOP A SHELL*FROM*CRABMEAT SEPARATOR TO BENEFICIATE THE PRODUCT COMING FROM THE SHAKER. Brooks and Reinke now have an existing non-active Maryland corporation--SEA-SAVORY, INC. Time and money can be saved by using it--change later the name, if desirable. Issue stock in equal 100 share amounts to Hendrickson, Tolley, Reinke, Brooks, Wenstrum [sic], Rodgers and Hunt. Rodgers, Hunt and Wenstrum [sic] to assign patent or patents on Wenstrum [sic] Shaker to Sea-Savory, Inc. ALL STOCKHOLDERS, EXCEPT WENSTRUM [sic], will purchase 100 shares of stock for $ 1000.00 ($ 10.00 per share). Wenstrum's [sic] stock, 100 shares, will be considered purchased by he ideas, drawings and concepts *630 and labor he has contributed. Corporation will proceed with trying to devise an effective Separator to be used following the Shaker. Without it the Shaker is almost useless in today's labor market. In return for assigning all ideas that may be patentable, Wenstrum [sic] is to be paid a fee of $ 3000.00 for 3 months of diligent, full-time work in devising such a separator or separators. Another $ 2000.00 is to be made available for expenses with receipts and vouchers to be furnished to the Corp. for such expenses. Brooks, Tolley, Hendrickson, and Reinke will work vigorously with Wenstrum [sic] and others in devising and developing a shell-from-meat separator, and in actively determinging [sic] the possibilities and needed improvements on the Wenstrum [sic] Shaker. They will make available their varied experience in this field, their business background and contacts, and expertise in the Crab Industry in assembling and marketing a simple, rugged commercial machine or set of machines for Crab Meat Picking. The Corp. will have the right to offer Wenstrum [sic] employment on a continuing basis, in terms of developing refinements of the crabpicking machinery discussed *631 above, and in terms of developing other machinery for other segments of the seafood industry. Should more monies be needed to bring these machines ready for marketing, additional shares of stock are to be purchased by Tolley, Hendrickson, Brooks & Reinkle in equal amounts. The same number of shares bought by each of above would be issued each to Rodgers & Hunt, the dollar amount of which at 10.00 per share would be deducted from each of the 5000.00 notes issued to Rodgers & Hunt. Wenstrom will be issued an amount of stock equal to that issued to any of the above without cost. This proposal becomes a letter of intent with signatures below. Pres.--Reinke, V. Pres. Rodgers, Treas.--Brooks; Sec.--Tolley. These 4 will serve as directors. Such agreement was in fact signed by Mr. Reinke, Mr. Brooks, Mr. Tolley, Mrs. Rodgers, Mr. Hunt, and Mr. Wenstrom on September 27, 1971. All the stockholders of Sea Savoy have been associated with corporations involved in the crab packing business. Mr. Reinke has been so associated since 1945. Prior to December 31, 1974, Sea Savory's research and development expenses were funded by shareholder contributions which were characterized as *632 purchases of corporate stock and advances for which notes were issued. On its corporate Federal income tax returns for its fiscal years ended April 30, 1973, and April 30, 1974, Sea Savory so reported such contributions. On December 31, 1974, at a special meeting of Sea Savory's board of directors held at their accountants' office, a resolution was adopted which provided that all stockholder payments made after December 31, 1973, would be considered as reimbursement to Sea Savory for research and development expenses as invoiced by Sea Savory, and not as loans. On its corporate Federal income tax returns for its fiscal years ended April 30, 1975, April 30, 1976, and April 30, 1977, Sea Savory reported such contributions as income. Since its reactivation in September 1971 to November 1979, Sea Savory had made no sales. During such period, its only compensated employee was Mr. Wenstrom. From September 1971 to November 1979, all patents developed by Mr. Wenstrom, or any of Sea Savory's other shareholders, had been assigned to Sea Savory. During 1974, the petitioners paid $ 7,000 to Sea Savory, such amount being Mr. Reinke's pro rata share of Sea Savory's expenses. On their *633 1974 return, the petitioners claimed a deduction for such payment as a research expenditure. In his notice of deficiency, the Commissioner disallowed such claimed deduction in its entirety. Section 174(a)(1) of the Internal Revenue Code of 1954[1] states, as a general rule, that "researchor experimental expenditures which are paid or incurred by * * * [a taxpayer] during the taxable year in connection with his trade or business," may, at the election of the taxpayer, be treated as expenses not chargeable to capital account and, therefore, may be deducted in the taxable year. The provisions of section 174(a)(1) "apply not only to costs paid or incurred by the taxpayer for research or experimentation undertaken directly by him but also to expenditures paid or incurred for research or experimentation carried on in his behalf by another person or organization (such as a research institute, foundation, engineering company, or similar contractor)." Sec. 1.174-2(a)(2), Income Tax Regs.
The petitioners contend that Sea Savory was used merely as a conduit through *634 which the research and development activities of its shareholders could be conducted. Hence, the petitioners argue that the $ 7,000 they transferred to Sea Savory in 1974 was reimbursement for research and experimentation carried on in their behalf within the meaning of section 1.174-2(a)(2) of the regulations. The Commissioner argues that Sea Savory was not carrying on research and development activities for its shareholders, and that, therefore, the $ 7,000 the petitioners transferred to Sea Savory in 1974 was a non-deductible contribution to its capital. The sole evidence on this issue consists of the September 27, 1971 agreement, the resolution of December 31, 1974, adopted by the board of Sea Savory, and the treatment accorded similar transfers by Sea Savory and its shareholders prior to the adoption of such resolution. The petitioners, relying on the last paragraph of the September 27, 1971 agreement, argue that it was merely a letter of intent which did not fully express the agreement of Sea Savory's shareholders. However, by its terms, the proposal became an agreement when executed by the parties thereto and it was in fact executed by such parties on September 27, 1971. *635 Such agreement makes clear that the transfers to Sea Savory by the shareholders were contributions to capital, and through 1972 and 1973, the shareholders and Sea Savory consistently treated such transfers as contributions to capital, and not not as payment for research services which Sea Savory was performing for its shareholders. Moreover, there is no explanation of the reason for purportedly changing the method of treating the transfers at the end of 1974. In fact, the record does not reveal that there was a substantial change in the treatment of such transfers: the resolution declared that all stockholder "payments made after December 31, 1973 be considered as reimbursement to Sea Savory, Inc. for Research and Development Expenses as invoiced by said Corporation and not as loans. The record does not clearly reveal how the expenses are to be allocated among the shareholders, but there is a suggestion that they were to be allocated on a pro rata basis. If the payments continued to be allocated on the basis of the shareholders' ownership interest in Sea Savory, then the payments were in substance capital contributions, and not payment for research services. Finally, the 1971 *636 agreement provided that all existing patents were to be assigned to Sea Savory, and it is stipulated that all patents developed since 1971 have been assigned to Sea Savory. The implication of such assignments is that it is Sea Savory which is carrying on research in its behalf, and not on behalf of its shareholders. The Commissioner's determination of a deficiency is presumptively correct, and the petitioners have the burden of proving otherwise. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). On the record before us, here is simply insufficient evidence to treat the funds transferred by the petitioners to Sea Savory in 1974 as other than characterized by the Commissioner, a contribution to capital. Had Sea Savory's shareholders organized it as a partnership (see Snow v. Commissioner,416 U.S. 500 (1974)), or had they elected to have been taxed as an electing small business corporation (see secs. 1371-1377), Sea Savory's research and experimental expenditures might have been deductible by its shareholders. However, "while a taxpayer is free to organize his affairs as he chooses, nevertheless, *637 once having done so, he must accept the tax consequences of his choice, whether contemplated or not, * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not." Commissioner v. National Alfalfa Dehydrating & Milling Co.,417 U.S. 134, 149 (1974). As we decide that the $ 7,000 the petitioners transferred to Sea Savory was not made to reimburse Sea Savory for research carried on in their behalf, we need not determine whether such funds were expended "in connection with" the petitioners' trade or business. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1974.↩