ROGER A. SCHUBEL AND SHIRLEY D. SCHUBEL, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2314–80.    Filed September 28, 1981.

*John E. Cicero II*, for the petitioners.
*J. Michael Melvin*, for the respondent.

## OPINION

EKMAN, *Judge*: Respondent determined a deficiency of $602 in petitioners' Federal income tax for the year 1977. Due to a concession by petitioners, the sole issue remaining for our decision is whether amounts withheld as "prepaid finance charges" from a mortgage loan are deductible in the year petitioners received the balance of the mortgage loan proceeds.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners Roger A. Schubel and Shirley D. Schubel, husband and wife, resided in Temple Terrace, Fla., at the time they filed their petition herein. Their Federal tax return for 1977 was filed with the Internal Revenue Service Center at Chamblee, Ga.

Petitioners, cash basis taxpayers, borrowed $20,000 from one Trilby Overstreet to purchase their personal residence. Petitioners also, in purchasing their personal residence, obtained a "first mortgage loan" from Florida Federal. After Mr. Overstreet's death, his widow requested that petitioners repay the $20,000 loan. In order to comply with that request, petitioners, on September 12, 1977, refinanced their residence by obtaining a "first mortgage home loan" from Pan American Bank of Tampa.

The Pan American Bank loan, in the amount of $55,000, was secured by a mortgage on petitioners' residence, and in connection therewith, petitioners incurred "prepaid finance charges" in the following amounts:

| | | |
|---|---|---|
| Origination fee | 1 percent | $550.00 |
| Loan discount fee | 2 percent | 1,100.00 |
| Interest on new loan | | 243.39 |
| Total | | 1,893.39 |

This amount was subtracted from the face of the loan and withheld by the bank. The 2-percent discount fee is an established practice in the Tampa area and is the amount generally charged in that area.

The balance of the proceeds of the loan, $53,106.61, was used by petitioners to pay the following debts:

| | |
|---|---|
| Note (Trilby Overstreet) | $20,000.00 |
| Florida Federal (1st mortgage) | 29,599.60 |
| J. C. Penney's | 555.39 |
| J. C. Penney's | 497.34 |
| Maas Bros | 604.00 |
| Sears | 936.74 |

The $29,599.60 paid to Florida Federal satisfied the outstanding balance due on its first mortgage.

Petitioners contend that the prepaid finance charges incurred in connection with the refinancing of their personal residence qualify as points paid under section 461(g)(2) entitling them, as cash basis taxpayers, to a deduction for the full amount of those charges in 1977. Respondent disagrees.

Section 163(a) generally allows a deduction for all interest paid or accrued within the taxable year on indebtedness. Section 163 must be read in conjunction with section 461. *Baird v. Commissioner*, 68 T.C. 115, 130 (1977). Section 461(g)(1) provides:

(1) IN GENERAL.—If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period—

(A) with respect to which the interest represents a charge for the use or forbearance of money, and

(B) which is after the close of the taxable year in which paid,

shall be charged to capital account and shall be treated as paid in the period to which so allocable.

Thus, a cash basis taxpayer may deduct prepaid interest no earlier than in the taxable year in which (and to the extent that) the interest represents a charge for the use or forbear-

ance of borrowed money during that period. See Joint Committee Explanation of Tax Reform Act of 1976 (Dec. 29, 1976), 1976–3 C.B. (Vol. 2) 1, 112; H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 791; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 141.

Prior to the enactment of section 461(g) (sec. 208, Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, 1541), considerable confusion surrounded the deductibility of prepaid interest and a case-by-case analysis, to determine whether the deduction of prepaid interest materially distorted or clearly reflected income, characterized opinions of this Court[1] and rulings[2] published by respondent. See Joint Committee Explanation, *supra*, 1976–3 C.B. (Vol. 2) at 112; S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 141; and H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 791. It was intended by Congress that section 461(g)(1) would compel the cash basis taxpayer to deduct interest prepayments in the same manner as the accrual basis taxpayer. See H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 792; S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 142; and Joint Committee Explanation, *supra*, 1976–3 C.B. (Vol. 2) at 112–113.

An exception to the general rule of section 461(g)(1) is set forth in section 461(g)(2) which provides that section 461(g)(1):

shall not apply to points paid in respect of any indebtedness incurred in connection with the purchase or improvement of, and secured by, the principal residence of the taxpayer to the extent that, under regulations prescribed by the Secretary, such payment of points is an established business practice in the area in which such indebtedness is incurred, and the amount of such payment does not exceed the amount generally charged in such area.

Therefore, if the requirements of section 461(g)(2) are satisfied,

---

[1]*Resnik v. Commissioner*, 66 T.C. 74 (1976), affd. per curiam 555 F.2d 634 (7th Cir. 1977); *Lewis v. Commissioner*, 65 T.C. 625 (1975); *Cole v. Commissioner*, 64 T.C. 1091 (1975), affd. 586 F.2d 747 (9th Cir. 1978); *Burck v. Commissioner*, 63 T.C. 556 (1975), affd. 533 F.2d 768 (2d Cir. 1976); *Sandor v. Commissioner*, 62 T.C. 469 (1974), affd. per curiam 536 F.2d 874 (9th Cir. 1976).
[2]Rev. Rul. 68–643, 1968–2 C.B. 76; Rev. Rul. 69–582, 1969–2 C.B. 29.

the taxpayer is not limited to a ratable deduction of the "points,"[3] as would be the case for other instances of prepaid interest. Petitioners claim their "prepaid finance charges" fall within this exception.

Respondent contends that in order to fall within section 461(g)(2), prepaid finance charges must be "paid" and that the receipt of discounted loan proceeds is not "payment." Respondent further contends that, even if petitioners' receipt or use of the discounted loan proceeds can be construed as the "payment of points," in the case at bar such proceeds were not used for, and the points were not paid in respect of, "any indebtedness incurred in connection with the purchase or improvement of * * * the principal residence of the taxpayer" since the loan was used to pay their existing indebtedness.

Petitioners contend that they "paid" the "prepaid finance charges" in 1977, the year that the balance of the proceeds became available to pay their debts. Petitioners concede that the amount of the loan proceeds used to pay debts owed J. C. Penney's, Maas Bros., and Sears was not an amount used "in connection with the purchase or improvement" of their residence.[4] However, they contend that amounts used to pay Overstreet and Florida Federal were used for that purpose and accordingly a percentage of the points is "points paid in respect of any indebtedness incurred in connection with the purchase or improvement" of their residence.

We agree with respondent's first argument that since petitioners received, or had available, only the face amount of the loan less the "prepaid finance charges," those "prepaid finance charges" were not "paid" during 1977. In *Rubnitz v. Commissioner*, 67 T.C. 621, 628 (1977), we said:

---

[3]Apparently, respondent is willing to consider the fees or charges, except for the "interest on new loan," as "points" for purposes of this case. Cf. *Baird v. Commissioner*, 68 T.C. 115, 130 (1977).

[4]Petitioners contend that these debts consumed 4.7 percent of the total loan amount and accordingly 4.7 percent of the points is deductible only ratably over the life of the loan. However, if we were to hold that part of the prepaid finance charges constituted points paid in respect of indebtedness in connection with the purchase of their personal residence, the percentage of "prepaid finance charges" to be accorded treatment under sec. 461(g)(2) would at most be 90.18 percent ($20,000, note to Overstreet, plus $29,599.60, Florida Federal mortgage, divided by $55,000, the total loan amount) and not the 95.3-percent figure petitioners use. The flaw in their apportionment arises because the balance of the proceeds exceeds the total of debts listed in the stipulation.

it has been consistently held that a cash basis borrower has not paid interest when the loan transaction is structured so that a loan fee is "withheld" by the lender from what is called the principal amount of the loan and only the supposed principal amount minus the loan fee is actually made available for the borrowing taxpayer's use. *J. W. Solof*, 1 B.T.A. 776, 783; *A. O'Day*, 20 B.T.A. 455, 458; *John C. Cleaver*, 6 T.C. 452, affirmed 158 F.2d 342 (7th Cir.), certiorari denied 330 U.S. 849; *John Randolph Hopkins*, 15 T.C. 160, 180–181; *Sanford Campbell*, T.C. Memo. 1970–126, 29 T.C.M. 539, 1970 P-H Memo. T.C. par. 70,126; Rev. Rul. 75–12, 1975–1 C.B. 62; Rev. Rul. 59–260, 1959–2 C.B. 137.

See also *Heyman v. Commissioner*, 70 T.C. 482, 485 (1978), affd. without published opinion 633 F.2d 215 (6th Cir. 1980); *Wilkerson v. Commissioner*, 70 T.C. 240 (1978), revd. 655 F.2d 980 (9th Cir. 1981); *Roemer v. Commissioner*, 69 T.C. 440, 463 (1977), affd. sub nom. *Holgerson v. Commissioner*, 638 F.2d 104 (9th Cir. 1981).[5]

Petitioners contend that those cases involving discounted loans are not applicable since they concerned taxable years prior to the enactment of section 461(g). However, as stated in H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 793, and S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 143, Congress "[did] not intend the new rule to change the treatment of a discount loan under present law by a cash method taxpayer." See also Joint Committee Explanation, *supra*, 1976–3 C.B. (Vol. 2) at 113.[6]

It is petitioners' position that this statement in the Committee reports should be limited to section 461(g)(1) and that Congress did not intend the rules applicable to discounted loans to apply to prepaid finance charges which are points within the meaning of section 461(g)(2). Petitioners contend

---

[5]See also *Brown v. Commissioner*, T.C. Memo. 1978–132; *Cathcart v. Commissioner*, T.C. Memo. 1977–328 ("points" withheld).

[6]The Committee reports also indicate that Congress was quite aware of the economic substance of, and the case law applicable to, discounted loans:

"The tax treatment of a loan requiring prepaid interest or points has contrasted with the tax treatment of a discount loan under present law, although in many situations the economic substance of both transactions is similar. In a discount loan, the lender delivers to the borrower an amount which is smaller that the face amount of the loan. The difference between the face amount and the amount delivered to the borrower is the charge for his use of the borrowed funds. Under prior law, a borrower on the cash method could not deduct the entire interest element in the year in which he received the loan proceeds. He could deduct the interest element only when and as he actually repaid the face amount of the loan. [Joint Committee Explanation (1976), 1976–3 C.B. (Vol. 2) 1, 110; H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 790; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 139–140. Fn. refs. omitted.]"

that if this were not the case, the relief which Congress intended to provide by enacting section 461(g)(2) would be "circumvented."

Looking solely to the statute, we find two separate analyses which indicate that petitioners' reading of congressional intent is erroneous. First, when Congress, well aware of case law existing at that time and the narrow meaning accorded the word "paid," provided in section 461(g)(2) that section 461(g)(1) "shall not apply to points *paid* in respect of any indebtedness" (emphasis supplied), it did not intend points *withheld* to fall within this exception. We cannot find any indication that Congress intended "paid" to mean something other than its meaning under then-existing case law and petitioners have not pointed to, nor could we find any, legislative history indicating otherwise.

But even if Congress used the word "paid" inadvertently in section 461(g)(2), the interplay of section 461(g)(1) with section 461(g)(2) further indicates that Congress did not intend to allow a cash basis taxpayer a current deduction for "points withheld" and that petitioners' analysis of congressional intent is erroneous. Section 461(g)(1) provides an exception, or a limitation (see *Wilkerson v. Commissioner*, 70 T.C. at 257), to the ordinary rules of interest deduction; section 461(g)(2) is an exception to this exception, merely lifting the limitation. Thus, the ordinary rules of deductibility of interest outside of section 461(g), including those pertaining to discounted loans, are applicable if the section 461(g)(2) exception applies. In other words, even if section 461(g)(2) did not include the word "paid," the most petitioners could hope for is escape from section 461(g)(1) and, therefore, in order to get a deduction, they still must "pay" the points. The logical explanation for this statutory construction is that Congress considered the entire section 461(g) (as evidenced further by the title of that section) to be applicable only to cases of pre*paid* interest and did not intend section 461(g)(2) as a provision entitling a cash basis taxpayer to a current deduction for points withheld.

The payment required to entitle a cash basis taxpayer to a deduction is the payment of cash or its equivalent and the giving of a note is not the equivalent of cash. *Don E. Williams, Co. v. Commissioner*, 429 U.S. 569 (1977); *Helvering v. Price*, 309 U.S. 409 (1940); *Beck v. Commissioner*, 74 T.C. 1534, 1562

(1980), on appeal (9th Cir., Jan. 22, 1981). The theory in disallowing a full deduction for interest withheld by the lender in the year it is withheld is that giving a promissory note and having interest withheld from the loan proceeds (i.e., discounting the loan) are indistinguishable. *Wilkerson v. Commissioner*, 70 T.C. at 257; *Heyman v. Commissioner, supra* at 485.[7] We find this theory to be applicable to points withheld from a cash basis taxpayer and, as indicated by the statute itself and the legislative history, Congress intended this to be the result.

In view of our holding that "prepaid finance charges" (including interest on the new loan) withheld by the lender are not points "paid" so as to entitle petitioners to a deduction for the full amount of such charges in the year withheld, we need not decide whether the indebtedness was incurred in connection with the purchase or improvement of their personal residence.

*Decision will be entered for the respondent.*

---

[7]In response to the argument that the substance of a discounted loan is no different than if the lender credits the taxpayer's bank account and the taxpayer then withdraws funds from this amount to pay the interest, we said in *Rubnitz v. Commissioner*, 67 T.C. 621, 629 (1977):

"However, even if the loan transaction had been so structured—and it was not—Branham would not necessarily be treated as having 'paid' the loan fee. For the critical point which appears from the record before us is that Branham never had unrestricted control over any portion of the loan proceeds, much less over the entire $1,650,000. Its powers in respect of these funds were at all times subject to substantial limitations. Under such conditions, a prearranged retransfer of funds, immediately after they had been deposited in Branham's account, as the final step in an integrated transaction would not constitute the 'payment' which gives rise to a deduction by a cash basis taxpayer. *Thomas Watson*, 8 T.C. 569, 579; *T. Harvey Ferris*, 38 B.T.A. 312, 317, affirmed per curiam 102 F.2d 985 (2d Cir.). Cf. *Newton A. Burgess*, 8 T.C. 47, 50. Moreover, there is no evidence that Branham had sufficient assets—apart from the loan proceeds—from which it could have paid the loan fee in full. Cf. *G. Douglas Burck*, 63 T.C. 556, 559–560, affirmed 533 F.2d 768 (2d Cir.)."

Also cf. *Battelstein v. Internal Revenue Service*, 631 F.2d 1182 (5th Cir. 1980) (revg. and remanding en banc District Court opinion), 611 F.2d 1033 (5th Cir. 1980), vacated, cert. denied April 27, 1981; *Heyman v. Commissioner*, 70 T.C. 482 (1978), affd. without published opinion 633 F.2d 215 (6th Cir. 1980); but cf. *Wilkerson v. Commissioner*, 70 T.C. 240 (1978), revd. 655 F.2d 980 (9th Cir. 1981).