JAMES RICHARD HUNTSMAN AND ZENITH ANNETTE HUNTSMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5883-87.          Filed November 17, 1988.

*Kathryn J. Sedo,* for the petitioners.
*Gail K. Gibson,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency of $8,020 in petitioners' 1983 Federal income tax.

After concessions, the sole issue is whether petitioners are entitled to deduct in the year paid, as interest expense, loan origination and loan discount fees (points) paid in connection with refinancing their principal residence.

The facts have been fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioners resided in Stillwater, Minnesota, at the time that they filed their petition. They timely filed a joint Federal income tax return on a cash basis for 1983.

In January 1981, petitioners purchased a principal residence in Stillwater, Minnesota. The residence was partly financed by a loan, secured by a mortgage on the property, in the amount of $122,000. The note was payable in monthly installments with the balance to be paid in January 1984. In July 1982, petitioners financed a home improvement with a loan of approximately $22,000, secured by a second mortgage on the property.

On September 16, 1983, petitioners refinanced their residence with a 30-year loan, the proceeds of which were used to pay off the notes secured by the existing first and second mortgages. This loan was also secured by a mortgage on their residence. As part of the refinancing, petitioners paid points from their own funds. The points consisted of a loan origination fee of $1,480 and a loan discount fee of $2,960, for a total of $4,440. They deducted this amount as interest expense.

Section 163(a)[1] generally allows a deduction for all interest paid within a taxable year on indebtedness. That section must be read in conjunction with section 461. *Zidanic v. Commissioner*, 79 T.C. 651, 653 (1982). Section 461(g) sets out the general rule that a cash basis taxpayer is to treat prepaid interest in the same manner that an accrual basis taxpayer would—that is, he is allowed a deduction in the year during which the interest represents a charge for the use or forbearance of money.[2]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Sec. 461(g)(1) provides:

Section 461(g)(2) contains an exception to this general rule for certain points paid in connection with certain loans secured by mortgages on principal residences. That paragraph provides:

(2) EXCEPTION.—This subsection shall not apply to points paid in respect of any indebtedness incurred in connection with the purchase or improvement of, and secured by, the principal residence of the taxpayer to the extent that, under regulations prescribed by the Secretary, such payment of points is an established business practice in the area in which such indebtedness is incurred, and the amount of such payment does not exceed the amount generally charged in such area.

The parties agree that the points paid as part of the refinancing transaction meet all the criteria for deductibility in the year paid except whether the debt was incurred "in connection with the purchase or improvement" of petitioners' principal residence. Petitioners contend that that phrase encompasses a refinancing transaction such as the one that they consummated, so that the points they paid are immediately deductible. Respondent contends otherwise, and argues that the points may only be deducted ratably over the life of the loan.[3] We agree with respondent.

We have not had occasion to interpret the meaning of "in connection with the purchase or improvement" as used in section 461(g). We note, however, that in other cases dealing with the exception in section 461(g)(2), we have construed the terms used therein narrowly, requiring taxpayers to comply with all requirements for the exception therein to apply. See *Schubel v. Commissioner,* 77 T.C. 701 (1981).[4] We think that, in light of the legislative history of section

(1) IN GENERAL —If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period—

    (A) with respect to which the interest represents a charge for the use or forbearance of money, and

    (B) which is after the close of the taxable year in which paid,

shall be charged to capital account and shall be treated as paid in the period to which so allocable.

[3]Respondent's position herein is reflected in Rev. Rul. 87-22, 1987-1 C.B. 146, which does not, however, constitute substantive authority for that position. *Stark v. Commissioner,* 86 T.C. 243, 250-251 (1986). Respondent has made no attempt to deal separately with the points representing the loan origination fee and the points representing the loan discount fee (see p. 918, *supra*); he deals with both fees in the context of interest for the purposes of applying sec. 461. We do the same. See Rev. Rul. 67-297, 1967-2 C.B. 87. See also *Noble v. Commissioner,* 79 T.C. 751, 776 n. 22 (1982).

[4]See also *Cathcart v. Commissioner,* T.C. Memo. 1977-328.

461(g), a limited reading of the term "in connection with the purchase or improvement" is appropriate here and therefore sustain respondent's position.

The legislative history does not deal directly with the treatment under section 461(g)(2) of points paid in refinancing transactions. The House report, however, provides that: "A loan will not qualify under this exception * * * if the loan proceeds are used for purposes other than purchasing or improving the taxpayer's principal residence." H. Rept. 94-658, at 101 (1975), 1976-3 C.B. (Vol. 2) 695, 793. Identical language is contained in the Senate report and the Staff of the Joint Committee on Taxation's General Explanation. See S. Rept. 94-938, at 105 (1976), 1976-3 C.B. (Vol. 3) 49, 143; Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, at 102 (1976), 1976-3 C.B. (Vol. 2) 1, 114.

By using this language, we think that Congress meant to limit the application of the exception in section 461(g)(2) to points paid in respect of financing the actual purchase of a principal residence or financing improvements to such residence. In this connection, we think it of some significance that when Congress dealt further with the deductibility of home mortgage interest in the Revenue Act of 1987, it saw fit to treat with specificity the refinancing of such a mortgage. Pub. L. 100-203, sec. 10102(a), 101 Stat. 1330-384 (now codified at section 163(h)(3)). Cf. *Dunn Trust v. Commissioner*, 86 T.C. 745, 755 n. 4 (1986).

In a refinancing transaction, the funds generated by the loans generally are used not to purchase or improve a principal residence but to pay off the loan that is already in existence and thereby lower the interest costs incurred or achieve some other financial goal not connected directly with home ownership. Therefore, we hold that the exception to section 461(g)(1) set forth in section 461(g)(2) does not apply to points paid on refinancing transactions and that, if such points are otherwise deductible, they are deductible ratably over the life of the loan.[5]

---

[5]We do not herein decide that all types of refinancing of a principal residence fall outside the exception of sec. 461(g)(2). An example may be the building of a residence with a construction loan replaced upon completion with a permanent mortgage loan. Another example may be a "bridge" loan, depending upon the circumstances. Since the record herein does not permit the

Our conclusion herein is not changed by the facts that the final principal payment on petitioners' purchase money loan was due in January 1984 and that the proceeds of the refinancing loan were used to make that payment. Both the structure of the original financing and the means to meet the obligation under that note were at least in part of petitioners' choosing, and neither is directly related to the actual acquisition of the principal residence.

To reflect the foregoing, and concessions by the parties,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

NIMS, CHABOT, KÖRNER, COHEN, JACOBS, WRIGHT, and WHALEN, *JJ.*, agree with the majority opinion.

WHITAKER, SWIFT, GERBER, PARR, WILLIAMS, and WELLS, *JJ.*, did not participate in the consideration of this case.

---

RUWE, *J.*, dissenting: The majority interprets the phrase "in connection with the purchase or improvement of * * * the principal residence of the taxpayer" too narrowly. The main thrust of the majority's interpretation is that points paid on a loan secured by a taxpayer's principal residence will not be deductible in the year paid unless proceeds of the loan are actually paid to the seller or to a supplier or contractor for improvements to the residence. This hard and fast rule would seemingly apply regardless of the fact that refinancing was a necessary step in an integrated series of financing transactions, the objective of which was home ownership.[1]

The majority assumes that most instances of refinancing are for the purpose of obtaining a rate of interest lower than that on the original loan and appears to view

conclusion that the instant case falls within either category, we do not reach the questions involved.

[1] The majority might make an exception for the refinancing of construction loans or "bridge" loans, see majority opinion at 920, note 5, but does not define those terms or explain why petitioners' facts fail to come within those potential exceptions.

petitioners' situation as one of those instances.[2] Petitioners purchased their home in January 1981, and borrowed $122,000 of the purchase price by giving the lender a mortgage and a note. The mortgage refers to a note, dated January 16, 1981, requiring monthly payments with a balance payable in January 1984.

Neither the original note nor its terms were placed into evidence; however, a reasonable inference can be drawn from the stipulated exhibits that the original January note required payments over its 3-year period which would do little to reduce the balance owed by petitioners at the end of the 3-year period. When this original loan was paid off with the proceeds of the permanent 30-year note on September 16, 1983, the balance due on the original 3-year loan was $122,907.81. In July 1982, petitioners borrowed an additional $22,293.56 to pay for home improvements. The terms of the home improvement loan are not in the record. However, the balance of this loan in September 1983, which was paid with the proceeds of petitioners' permanent loan, was $22,577.65. The hard reality is that petitioners in this case were locked into a situation which necessitated that they obtain permanent financing (or at least some type of refinancing) within 3 years of the date of the purchase. When petitioners purchased their home, it would have been evident to anyone, including petitioners and the lending bank, that some form of refinancing was a necessary component of the purchase. This was so regardless of whether interest rates declined or rose during the 3 years following the date of purchase. The majority's assumption that the purpose of refinancing is to lower interest costs is inapplicable and, indeed, the record fails to indicate whether interest costs were reduced.

During the last 15 years, there have been great fluctuations in the cost and availability of financing for home purchases. This has led to innovations which are sometimes referred to as creative financing. Given the variations in

---

[2]Respondent's position, reflected in Rev. Rul. 87-22, 1987-1 C.B. 146, also seems to assume this as an operative fact (the refinancing in the ruling results in a reduction in interest rate from 16 percent to 10 percent). The revenue ruling also appears to assume as an operative fact that the original loan being refinanced is a long-term mortgage (terms are not specified but refinancing is 6 years after the purchase). Neither assumption is applicable under the facts in the instant case.

financing methods, I think it unwise and contrary to the language of the statute to focus on only one step in what is obviously an integrated series of connected steps in the purchase of a home. From the standpoint of an ordinary person who is purchasing a home with the proceeds of a large loan, payable 3 years from the date of purchase, refinancing would be a foreseeable necessity "in connection with" the purchase.[3]

The legislative history cited at page 920 of the majority opinion provides no basis for a restrictive reading of the "in connection with the purchase or improvement" language of the statute. Also, I think it irrelevant that Congress chose what is arguably more specific language in a statute enacted over a decade later where the later statute does not purport to control the outcome of this issue.

There were a number of factors in existence when Congress enacted section 461(g)(2) that are of assistance in determining the intent of Congress when it chose to allow the deduction of points paid "in connection with" the purchase or improvement of a principal residence. One was a recent and important opinion of the United States Supreme Court. In *Snow v. Commissioner,* 416 U.S. 500 (1974), the Supreme Court interpreted the phrase "in connection with" as set forth in section 174. Section 174(a)(1) permits a taxpayer to deduct "experimental expenditures which are paid or incurred by him during the taxable year *in connection with* his trade or business." *Snow v. Commissioner,* 416 U.S. at 501. (Emphasis added.) The Supreme Court contrasted section 174 with section 162 and noted that the language of section 162 "was more narrowly written" in that the latter only allowed a deduction of expenses "paid or incurred * * * *in carrying on* any trade or business" (emphasis added), whereas section 174 allowed a deduction if the expenditure was paid "in connection with" the taxpayer's trade or business. *Snow v. Commissioner,* 416 U.S. at 503.

---

[3]The stipulated facts indicate that petitioners fall into this category. Their 1983 income tax return showed that they were both employed, had two dependent children, and had an adjusted gross income of $70,988.35. Their itemized deductions for interest paid in 1983 included $24,218 in home mortgage interest and over $2,700 in interest on personal loans and credit cards.

In *Snow,* the taxpayer was a member of a partnership formed in 1966 to develop a "special purpose incinerator." The partnership reported a net loss for 1966 by reason of a deduction claimed under section 174. In 1966, the partnership had no manufacturing plant of its own and had no office or separate facility. Experimentation had hardly begun in 1966, application for a patent was not made until 1968, and no effort to market or sell the device was attempted until several years later. A patent was finally issued on the incinerator in 1970. See *Snow v. Commissioner,* 58 T.C. 585, 589-591, 596 (1972), affd. 482 F.2d 1029 (6th Cir. 1973), revd. 416 U.S. 500 (1974). The Court of Appeals and the Tax Court denied the deduction mainly because there was no existing trade or business to which the expenditures were related. The Supreme Court reversed, holding that the phrase "in connection with" modified the ordinary rule under section 162 which limited deductibility to only those expenditures made after the commencement of activities constituting a trade or business.

Congress began to consider the deductibility of points shortly after the Supreme Court in *Snow* interpreted the phrase "in connection with." H. Rept. 94-658, at 101 (1975), 1976-3 C.B. (Vol. 2) 695, 793; S. Rept. 94-938, at 105 (1976, 1976-3 C.B. (Vol. 3) 49, 143. Congress was aware of the Supreme Court's liberal interpretation of this phrase when it chose to incorporate the same language into section 461(g). It is therefore reasonable to assume, in the absence of any expression to the contrary, that Congress intended the same liberal interpretation be given to section 461(g)(2). See *Miller v. Commissioner,* 836 F.2d 1274, 1280 (10th Cir. 1988); *Schubel v. Commissioner,* 77 T.C. 701, 706 (1981); *Bond Crown & Cork Co. v. Commissioner,* 19 T.C. 73 (1952). See also *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 86-87 (1934).

In *Green v. Commissioner,* 83 T.C. 667 (1984), we held that *Snow* did not completely eliminate the "trade or business" requirement of section 174. "The taxpayer must still be engaged in a trade or business *at some time." Green v. Commissioner, supra* at 686. (Emphasis in original.) By inference, we have recognized that the words "in connection with," when used as a conjuctive between expenditure and

some other term, e.g., a trade or business, means that there can be a temporal hiatus between the two. In *Snow,* the lapse of time between the experimental expenditure and the initiation of activities constituting a trade or business was approximately the same as the time gap between the residential purchase and the necessary and permanent refinancing in this case.

Another factor existing at the time section 461(g)(2) was enacted was the solicitude for home ownership shown by Congress in enacting tax statutes. The interpretation of the phrase "in connection with" in *Snow* was largely driven by the legislative intent to encourage and favor research and development. The tax laws have shown at least as much solicitude for home ownership.[4] Indeed, section 461(g)(2) was enacted as a relief provision for home buyers who would otherwise have lost a deduction because of new restrictions intended to curb tax shelter abuses. H. Rept. 94-658, at 98, 101 (1975), 1976-3 C.B. (Vol. 2) 695, 790, 793; S. Rept. 94-938, at 102, 105 (1976), 1976-3 C.B. (Vol. 3) 49, 140, 143.

Note 5 of the majority opinion leaves a ray of hope for the up-front deduction of points on loans used to pay off construction loans or "bridge" loans. I find this somewhat inconsistent with the rationale contained in the body of the opinion. For example, if the majority would make exceptions for the refinancing of construction loans and "bridge" loans, would the rationale be that such loans are by nature temporary? If so, why doesn't a 3-year $122,000 note calling for a balloon payment qualify? The term "bridge" loan does not lend itself to a precise meaning, but taxpayers in a position similar to petitioners' might well wonder why their initial short-term loan does not come within that rubric.

In this case, we need not address the situation where permanent long-term financing is obtained to purchase a home and then refinancing is obtained in order to lower the interest rate. That is the situation implicit in respondent's ruling and I would leave that question for another day.

I believe that where refinancing is a foreseeable necessity at the time a taxpayer purchases a home, and that the refinancing is necessitated by the short-term nature of the

---

[4]See secs. 1221, 163(h)(2)(D), 461(g)(2), and 1034.

original financing, then refinancing is "in connection with" the purchase of the taxpayer's home.

PARKER, and COLVIN, *JJ.*, agree with this dissent.