**James Richard HUNTSMAN and Zenith Annette Huntsman, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 89–1672.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1990.

Decided June 14, 1990.

David B. Clark, Minneapolis, Minn., for appellants.

Bruce R. Ellisen, Washington, D.C., for appellee.

Before LAY, Chief Judge, BEAM, Circuit Judge, and HANSON,* District Judge.

LAY, Chief Judge.

James and Zenith Huntsman appeal the judgment of the United States Tax Court disallowing a prepaid interest deduction taken on their 1983 federal income tax return under I.R.C. § 461(g)(2) (1983), for points they paid in obtaining a permanent

---

* The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

mortgage on their principal residence. The tax court considered the indebtedness incurred was in the form of refinancing since the initial purchase money was obtained through a short-term three-year mortgage with a balloon payment at the end. The judgment of the tax court is reversed.

## BACKGROUND

In January 1981, the Huntsmans financed the purchase of their principal residence by obtaining a $122,000 three-year loan with a "balloon" payment [1] secured by a mortgage on their home. In July 1982, they obtained a $22,000 home improvement loan and secured it with a second mortgage on their home. In September 1983, the Huntsmans obtained a permanent mortgage on their home (a $148,000 thirty-year variable rate mortgage) and paid off the prior loans with the proceeds.

In obtaining their new mortgage, the Huntsmans paid $4,440 in points [2] which they deducted on their 1983 income tax return under section 461(g)(2), which allows the immediate deduction of points paid in connection with the purchase of a taxpayer's principal residence. In 1986, the Commissioner sent the Huntsmans a Notice of Deficiency disallowing the deduction on the grounds that section 461(g)(2) does not apply to points paid for refinancing a home, but only to points paid during the financing of the initial purchase.

The Huntsmans sought a redetermination of the alleged deficiency with the tax court which, sitting en banc, upheld the Commissioner's position by a 8–3 vote,

Judges Ruwe, Parker, and Calvin dissenting. *Huntsman v. Commissioner*, 91 T.C. 917 (1988). The tax court concluded that Congress intended to limit the application of section 461(g)(2) to situations involving the actual purchase or improvement of a principal residence. The court found it significant that Congress had treated the refinancing of a home mortgage with specificity when it dealt with home mortgage interest in the Revenue Act of 1987. *See* I.R.C. § 163(h)(3) (1987). The decision was also based on the conclusion that in most refinancing situations, the proceeds of the new loan are not used "to purchase or improve a principal residence but to pay off the loan that is already in existence and thereby lower the interest costs incurred or achieve some other financial goal not connected directly with home ownership." *Huntsman*, 91 T.C. at 920.[3]

## DISCUSSION

■ There is no question that the points paid by the Huntsmans are deductible. The issue in this case relates to the timing of the deduction, i.e., whether the Huntsmans may deduct the full amount of the points in the year they were paid or must amortize the amount over the life of the loan. Generally, I.R.C. § 461(g)(1) does not allow taxpayers to deduct prepaid interest in the year paid, but instead, provides that they may only take a deduction in the year (and to the extent) the interest represents a charge for the use or forbearance of money. *Id.*[4]

---

1. "Balloon" refers to the large payment that is usually required at the end of a short-term loan.

2. A "point" is usually a fee equal to 1% of the total loan value and is paid to the lending institution to lower the interest rate. These type of points are considered to be prepaid interest. *See* H.R.Rep. No. 658, 94th Cong., 2d Sess. 101, and S.Rep. No. 938, 94th Cong., 2d Sess. 105, *reprinted in* 1976 U.S.Code Cong. & Admin. News 2897, 2996 and 3439, 3541. In this case, the Huntsmans paid a loan origination fee of $1,480 and a loan discount fee of $2,960, for a total of 3 points.

3. Judge Ruwe in dissent reasoned that a "factor existing at the time section 461(g)(2) was enacted was the solicitude for home ownership shown by Congress in enacting tax statutes." *Huntsman*, 91 T.C. at 925. He concluded

"where refinancing is a foreseeable necessity at the time a taxpayer purchases a home, and that the refinancing is necessitated by the short-term nature of the original financing, then refinancing is 'in connection with' the purchase of the taxpayer's home." *Id.* at 925–26.

4. Section 461(g)(1) provides:
(1) In general.—If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period—
  (A) with respect to which the interest represents a charge for the use or forbearance of money, and
  (B) which is after the close of the taxable year in which paid,

Section 461(g)(2), however, creates an exception to this rule:

> (2) Exception.—This subsection shall not apply to points paid in respect of *any* indebtedness incurred *in connection with* the purchase or improvement of, and secured by, the principal residence of the taxpayer to the extent that, under regulations prescribed by the Secretary, such payment of points is an established business practice in the area in which such indebtedness is incurred, and the amount of such payment does not exceed the amount generally charged in such area.

I.R.C. § 461(g)(2) (emphasis added). Thus, under section 461(g)(2), a taxpayer may take a deduction for points paid on any indebtedness incurred in connection with the purchase or improvement of a principal residence in the year those points are paid.

■ In determining the scope of section 461(g)(2), we first look to the language of the statute. *United States v. James,* 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986) (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). The statute merely requires a taxpayer's indebtedness to be "in connection with" the purchase or improvement of the taxpayer's residence. Thus, we find a fair reading of the statute requires that the indebtedness need only have an "association" or "relation" with the purchase of the taxpayer's residence.[5] The statute does not require all indebtedness to be *"directly related* to the actual acquisition of the principal residence." *Huntsman,* 91 T.C. at 921 (emphasis added).

In *Snow v. Commissioner,* 416 U.S. 500, 94 S.Ct. 1876, 40 L.Ed.2d 336 (1974), the taxpayer was a partner in a limited partnership formed for the purpose of developing a special purpose incinerator. During the year in question the partnership made no sales but built and tested several models

of the incinerator. The taxpayer took a deduction for his distributive share of the net operating loss of the partnership under I.R.C. § 174(a)(1), on the basis that his expenditures were "in connection with" a trade or business. The Commissioner disallowed the deduction, concluding the losses were not "in connection with" a trade or business. The tax court sustained the Commissioner, 58 T.C. 585, and the sixth circuit affirmed, 482 F.2d 1029 (6th Cir. 1973). The Supreme Court reversed, finding that the use of "in connection with" in section 174(a)(1) was intended to "dilute some of the conception of 'ordinary and necessary' business expenses under I.R.C. § 162(a)" and made section 162(a) narrower than section 174. *Snow,* 416 U.S. at 502–03, 94 S.Ct. at 1877–78. Thus, the experimental expenditures of the partnership were held to be "in connection with" the trade or business of the partnership under section 174(a)(1) even though the partnership had not been engaged in business in the year the losses were incurred.

The Huntsmans argue that the "in connection with" language of section 461(g)(2) should be construed as broadly as it was in *Snow.* The Commissioner argues that *Snow* is inapplicable here because even though section 174(a)(1) and section 461(g)(2) use the same language it does not necessarily follow that Congress intended the language to have the same meaning. Thus, the Commissioner argues that although the *Snow* opinion had been rendered at the time Congress enacted section 461(g)(2), Congress was not considering it or section 174, concerning research and experimental expenditures of a business, when it enacted section 461(g)(2) dealing with the deduction of points on home mortgages.

■ We cannot agree with the Commissioner that *Snow* is totally inapposite. Although the analysis in *Snow* relates to deductions under section 174, we find it to be a valid example of a broad judicial inter-

---

shall be charged to capital account and shall be treated as paid in the period to which so allocable.
I.R.C. § 461(g)(1).

5. "Connection" means "[a]n association, alliance, or relation." The American Heritage Dictionary 282 (1976).

pretation of the "in connection with" language in a tax code setting, and one that serves as a useful analogy in this case. When Congress adopted "in connection with" for use in section 461(g)(2), it was aware of the Supreme Court's interpretation of the same language in *Snow*. Therefore, it is reasonable to assume that they intended the same broad interpretation to be given to section 461(g)(2). *See Miller v. Commissioner*, 836 F.2d 1274, 1282 (10th Cir.1988).[6] Thus, based on the language of the statute and past judicial interpretations of that language, we conclude that section 461(g)(2) should be broadly construed.

Ordinarily, where statutory language is unambiguous, judicial inquiry into the meaning of that language is complete. *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). In this case both parties turn to the legislative history as support for their positions. The Commissioner argues that the history supports his position that section 461(g)(2) is limited to the financing of the initial purchase of a residence. We disagree. Both the House and Senate reports state that "[a] loan will not qualify under this exception * * * if the loan proceeds are used for purposes other than purchasing or improving the taxpayer's principal residence * * *." H.R.Rep. No. 658, 94th Cong., 2d Sess. 101, and S.Rep. No. 938, 94th Cong., 2d Sess. 105, *reprinted in*, 1976 U.S.Code Cong. & Admin.News 2897,

2996 and 3439, 3541. To conclude from this statement that the Huntsmans' obtaining a long-term permanent mortgage cannot be "in connection with" the purchase of their residence simply because it is "refinancing" begs the question. The statement must be read in conjunction with the modification of the term "purchase" by the "in connection with" language of the statute. When this is done, we find the legislative history to be inconclusive and more neutral than helpful.[7]

The tax court was concerned that refinancing of existing indebtedness is generally used to lower interest rates or to achieve some other financial goal not connected "directly" with home ownership. But the weakness of the government's case is that they concede that the Huntsmans did not do that here. Acquiring the permanent mortgage was done to extinguish the short-term loans and finalize the purchase of the home. We conclude that obtaining the short-term financing was merely an integrated step in securing the permanent financing to purchase the home.

Thus, where taxpayers purchase a principal residence with a short-term three-year loan secured by a mortgage on the residence, and replace the loan with permanent financing within the time period involved, the permanent mortgage obtained is sufficiently in connection with the purchase of the home to fall within the excep-

---

**6.** Other code sections containing "in connection with" have also been broadly construed. See *Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 (1971) (the fraudulent use and sale of the corporation's own United States Treasury Bonds to pay the corporation for the sale of its own stock caused the petitioner to suffer "an injury as a result of deceptive practices *touching its sale* of securities as an investor" and thus, was a manipulative device "in connection with" the sale or purchase of a security under section 10(b) of the Securities Exchange Act of 1934); *Atlantic Land & Improvement v. United States*, 790 F.2d 853, 856 (11th Cir.1986) (owner of phosphate loading facility was an "employer" within the meaning of 26 U.S.C. § 323(a) of the Railroad Retirement Tax Act, because the services it performed for the railroad were "in connection with" the transportation of property by the railroad); *Alves v. Commissioner*, 734 F.2d 478, 481–82 (9th Cir.1984) (stock purchased

by an employee was "in connection with" the performance of services under 26 U.S.C. § 83 so that appreciation in value of stock must be reported as gross income even though stock was purchased at full market value and was not considered compensation); *Rupprecht v. United States*, 11 Cl.Ct. 689, 691 (1987), *aff'd*, 829 F.2d 43 (Fed.Cir.1987) (payments received by employees of acquired corporation for unexercised stock options were obtained "in connection with" the performance of service under 26 U.S.C. § 83).

**7.** The majority opinion of the tax court concluded that its opinion did not mean that all types of financing were necessarily precluded from falling within the scope of section 461(g)(2). *See Huntsman*, 91 T.C. at 920 n. 5. Thus, even the tax court did not read the legislative history as supporting a finding that all types of refinancing were precluded under section 461(g)(2).

tion provided for by section 461(g)(2). As the language of the exception states *"any* indebtedness incurred *in connection with* the purchase or improvement" of the taxpayer's principal residence qualifies under 461(g)(2). To hold otherwise is to ignore the plain language of the Act.[8]

## CONCLUSION

The points paid by the Huntsmans in obtaining their permanent mortgage in this case are "in connection with" the purchase of their principal residence under section 461(g)(2). The judgment of the tax court is reversed and the cause is remanded for entry of judgment in favor of the taxpayers.

---

**8.** In the tax court's acknowledgement that not all types of refinancing are outside the scope of section 461(g)(2), it noted that points paid in refinancing a "construction" or a "bridge" loan may be deductible depending on the circumstances. *Huntsman,* 91 T.C. at 920 n. 5.