JEFFREY L. DODD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dodd v. Commissioner
Docket No. 15103-90.
United States Tax Court
T.C. Memo 1992-341; 1992 Tax Ct. Memo LEXIS 362; 63 T.C.M. (CCH) 3141; June 15, 1992, Filed *362 Decision will be entered under Rule 155. Lawrence W. Kay, for petitioner. Thomas F. Eagan, for respondent. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
1986
$ 1,774
$ 88.70
50% of the interest
due on $ 1,774   1987
$ 2,518
$ 125.00
50% of the interest
due on $ 2,518   The issues for decision are: (1) Whether a hot air balloon used by petitioner in his trade or business during 1986 and 1987 constitutes a facility within the meaning of section 274(a)(1)(B); (2) whether deductions for points and a mortgage insurance premium paid during 1986 *363 to refinance a mortgage on petitioner's principal residence for the purpose of converting it to rental property are allowable under section 461(g)(2); and (3) whether petitioner is liable for the additions to tax under section 6653(a)(1)(A) and (B). Some of the facts have been stipulated and are so found. Petitioner resided in Albuquerque, New Mexico, at the time his petition was filed. In 1986 and 1987, petitioner was employed as a sales representative for a pharmaceutical manufacturer, Boehringer Ingelheim Pharmaceuticals, Inc. (Boehringer Ingelheim). On his 1986 and 1987 Federal income tax returns, petitioner claimed employee business expense deductions for the following expenses associated with a hot air balloon that petitioner used exclusively for entertaining medical professionals and their guests in connection with his employment as a pharmaceutical sales representative: 1986
Depreciation - Balloon
$ 2,516
Insurance - Balloon
268
Fuel - Balloon
155
Beer/Champagne
87
Sales tax - Balloon purchase
290
Interest - Loan to purchase balloon
306
Miscellaneous
5
Total
$ 3,627
1987
Depreciation
Balloon
$ 2,402
Truck & trailer
2,622
$ 5,024
Fuel
Balloon
$   168
Truck
166
334
Insurance
Balloon
$   625
Truck & trailer
680
1,305
Balloon Tax
$    15
Albuquerque Balloon
Fiesta entry fee
75
90
Repairs
489
Travel for out of town
46
balloon trip
46
Champagne, beer, & snacks
959
Miscellaneous
5
Total
$ 8,252
*364 Petitioner was not reimbursed by his employer for any of the above expenses. In an effort to increase pharmaceutical sales to medical professionals, petitioner used the balloon to fly physicians, pharmacists, and their family members and guests on weekends. In the stipulation, respondent agreed that the expenses claimed by petitioner were substantiated in accordance with section 274(d) and that such expenses were ordinary and necessary and were incurred in connection with a trade or business under section 162(a). In the answer, respondent asserted that the balloon was an "entertainment facility" within the meaning of section 1.274-2(a)(2) and 1.274-2(e)(2)(i), Income Tax Regs., and, accordingly, the expenses claimed were not deductible under section 274(a)(1)(B) because the expenses were incurred "with respect to" such facility. The first question, therefore, with respect to this adjustment is whether the hot air balloon is a "facility". Since this position was not asserted in the notice of deficiency and was asserted by respondent in the answer, the burden of proof on this issue is on respondent. Rule 142(a). The pilot of a hot air balloon has control over the balloon's ascent *365 and descent by regulation of the device used to heat the air in the balloon; however, the horizontal direction of flight is solely subject to the direction of the wind and, therefore, is uncontrollable. Balloonists use a "chase crew" in a ground vehicle to track the balloon's flight path to its landing site. Petitioner noted that his chase crew followed the balloon in a four-wheel drive vehicle. The size of the basket (or gondola) of petitioner's balloon limits the maximum number of persons who could ride in the balloon to four, including petitioner as pilot. The passengers, serving as the "ground crew" under petitioner's direction, assisted petitioner with preparation of the balloon for flight and with disassembling and repacking of the balloon after landing. Due to the weight and size of the balloon's components, the preparatory and post-flight tasks required some physical exertion on the part of the participants. Petitioner described the preparatory and post-flight procedures as "a physically exasperating thing to do" and cited that as the main reason he used the balloon only for business-related flights during the years at issue. Safe operation of the balloon requires wind *366 speeds of less than 8 miles per hour and stable atmospheric conditions. Accordingly, most of petitioner's flights were conducted in early morning hours when wind conditions were most likely to be favorable. The flights usually lasted between 1/2 and 2 hours, with most flights being 1 hour or 1-1/2 hours in length. Section 274(a) provides: (a) Entertainment, Amusement, or Recreation. -- (1) In General. -- No deduction otherwise allowable under this chapter shall be allowed for any item -- (A) Activity. -- With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (B) Facility. -- With respect to a facility used in connection with an activity referred to in subparagraph (A). The first inquiry is whether the balloon is a "facility" as that term is used in section 274(a)(1)(B). The term *367 is not defined in the statute. The regulations, as to expenditures paid or incurred before January 1, 1979, state that a facility is "Any item of personal or real property owned, rented, or used by a taxpayer * * * if it is used * * * for, or in connection with entertainment". Sec. 1.274-2(e)(2), Income Tax Regs.; see also H. Rept. 1447, 87th Cong., 2d Sess. 19, 21 (1962). Examples of facilities which might be used in connection with entertainment include yachts, hunting lodges, fishing camps, swimming pools, tennis courts, bowling alleys, automobiles, airplanes, apartments, hotel suites, and homes in vacation resorts. Sec. 1.274-2(e)(2)(i), Income Tax Regs. These examples are consistent with the examples cited in S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 315, 473, and H. Conf. Rept. 95-1800 (1978), 1978-3 C.B. (Vol. 1) 521, 583. Petitioner argues that the hot air balloon is not an entertainment facility because "the nature of the activity is not entertainment" and is "more like work" because the passengers are required to assist with time-consuming and physically demanding tasks in preparation for a flight of relatively short duration. Petitioner *368 also seeks to distinguish the hot air balloon from automobiles, airplanes, and yachts, the three types of personal property mentioned in the regulations, on the following grounds: (1) The direction of the balloon's flight cannot be controlled, rendering its use as a means of transportation in the usual sense unfeasible; (2) the balloon's gondola is too small to permit the pilot or any of the passengers to be seated during the flight; (3) operation of the balloon is limited by weather and wind conditions; and (4) the balloon lacks a motor. "Entertainment" is defined in the regulations as "any activity which is of a type generally considered to constitute entertainment, amusement, or recreation". Sec. 1.274-2(b)(1)(i), Income Tax Regs. The Court rejects petitioner's contention that only passive, spectator activities constitute entertainment, amusement, or recreation. The passengers' active participation in tasks necessary to conduct a balloon flight does not change the activity's essentially recreational nature. Further, the fact that the pilot is unable to control the balloon's horizontal course of flight supports, rather than refutes, the conclusion that the purpose of the flights *369 was entertainment. The balloon flights petitioner provided clearly fall within the parameters of section 274(a)(1)(A). Petitioner's next argument that the balloon does not constitute a "facility" because it lacks certain of the characteristics found in the items of personal property cited as examples in the regulations (such as a motor or seats) is equally unpersuasive. The Court concludes that the evidence supports respondent's determination that the hot air balloon is a facility used in connection with entertaining within the meaning of section 274(a)(1)(B) and section 1.274-2(e)(2)(i), Income Tax Regs.
Having found that the balloon is a facility used in connection with entertaining, the next question is whether the expenses claimed were "with respect to" the facility and, therefore, disallowed by section 274(a)(1)(B), or whether the expenses were related to the entertainment activity itself (distinguishable from expenses related to the facility), so as to be deductible under section 274(a)(1)(A). Additionally, some items, such as taxes or interest, may be deductible as nontrade or business expenses even if paid in connection with an entertainment facility. Sec. 274(f). Section *370 1.274-2(e)(3)(i) and (iii), Income Tax Regs., [2] provide guidance in determining what expenditures are "with respect to a facility" under section 274(a)(1)(B), and what expenditures are "expenditures not with respect to a facility", respectively. Although the heading to section 1.274-2(e), Income Tax Regs., reads "Expenditures paid or incurred before January 1, 1979, with respect to entertainment facilities or any time with respect to clubs", [3] the Court noted in Harrigan Lumber Co. v. Commissioner, 88 T.C. 1562, 1565 n.7 (1987), affd. without published opinion 851 F.2d 362 (11th Cir. 1988): We do not believe the drafters of these regulations intended to exclude the guidance provided by sec. 1.274-2(e)(2) through (4), Income Tax Regs., in connection with expenditures paid or incurred subsequent to Dec. 31, 1978, with respect to entertainment facilities. For this reason, we apply sec. 1.274-2(e)(2) through (4), Income Tax Regs., to the years at issue in this case. [4]
The provisions in section 1.274-2(e)(3)(i) and (iii), Income Tax Regs., concerning the categorization of deductions as being "with respect to" or "not with respect to" an entertainment *371 facility are consistent with the 1978 amendment to the statute and the accompanying legislative history.[5] For these reasons, the Court looks to the relevant portions of the regulation, as well as the legislative history, in deciding which of petitioner's expenses are or are not with respect to the entertainment facility. *372 The Court finds that the deductions for depreciation, insurance, fuel, and repairs for the balloon and the vehicle used to transport it are "with respect to" the facility. Sec. 1.274-2(e)(3)(i), Income Tax Regs.; H. Conf. Rept. 95-1800 (1978), 1978-3 C.B. (Vol. 1) 521, 582. Respondent's determination as to these deductions is, therefore, sustained. Respondent conceded that petitioner established expenditures for beer, champagne, and snacks, and that such expenditures are deductible as business expenses under section 162. The Court finds that these expenses, incurred at the time of the entertainment activity, are not with respect to the facility. Sec. 1.274-2(e)(3)(iii)(a), Income Tax Regs.; see H. Conf. Rept. 95-1800 (1978), 1978-3 C.B. (Vol. 1) 585. Accordingly, petitioner is sustained with respect to these deductions, subject to the 80 percent limitation for meals and entertainment expenses under section 274(n) for the 1987 expenditures. Additional expenses deducted by petitioner in connection with the balloon activity are identified in the stipulation of facts as "travel for out of town balloon trip", a "balloon tax", and "Albuquerque Balloon *373 Fiesta entry fee", each in 1987, and $ 5 each year for "miscellaneous". Respondent conceded that each of these expenses would be allowable but for their status as items with respect to an entertainment facility, an issue upon which respondent bears the burden of proof. No evidence was provided by respondent regarding these deductions. The Court is unable, on this record, to conclude that such expenses constituted expenses "with respect to the facility" as distinguished from allowable expenditures incurred in connection with the entertainment activity. Accordingly, petitioner is sustained as to these items, subject to the 80 percent limitation of section 274(n) for the 1987 expenses. Respondent conceded that petitioner established expenditures in 1986 for interest on a loan to buy the balloon and sales taxes in the amount of $ 290 on the balloon's purchase. These expenditures are otherwise deductible under sections 163 and 164, respectively, and the limitations of section 274 are not applicable to these items. Sec. 274(f). Accordingly, petitioner is sustained as to the interest and sales taxes. On his 1986 return, petitioner deducted $ 2,551.70 for a mortgage insurance premium, *374 $ 671.50 for a loan origination fee, and $ 1,045.50 for a loan discount, all paid when he refinanced what was his personal residence in 1986. Prior to the refinancing, petitioner's residence was subject to a low-interest mortgage, which he had obtained as a first-time homeowner. A condition of the loan was that the residence had to be owner-occupied. When petitioner purchased another home for his residence and converted his prior home to rental property, the mortgage holder called in the loan, requiring petitioner to refinance. The deductions claimed relate to the refinancing charges petitioner paid when his former residence was converted to rental property. Respondent determined that refinancing expenses must be amortized over the life of the loan rather than deducting them in the year paid. Petitioner argues that the loan origination fee, discount fee, and mortgage insurance premium are points currently deductible as interest under sections 163 and 461(g)(2) because such expenses were incurred to refinance an acquisition loan secured by petitioner's principal residence. Section 461(g)(1) provides generally that interest prepaid by cash-basis taxpayers must be charged to capital *375 and treated as paid in the period to which it is allocable. Section 461(g)(2) provides an exception to the general rule: (2) Exception. -- This subsection shall not apply to points paid in respect of any indebtedness incurred in connection with the purchase or improvement of, and secured by, the principal residence of the taxpayer to the extent that, under regulations prescribed by the Secretary, such payment of points is an established business practice in the area in which such indebtedness is incurred, and the amount of such payment does not exceed the amount generally charged in such area. [6]
Thus, to be deductible in the year paid under section 461(g)(2), the points must have been paid in respect of indebtedness incurred in connection with the purchase or improvement of the taxpayer's principal *376 residence. Petitioner cites Huntsman v. Commissioner, 905 F.2d 1182 (8th Cir. 1990), revg. 91 T.C. 917 (1988), in support of his contention that the points paid qualify for the exception contained in section 461(g)(2). In the Huntsman case, the taxpayers' purchase of their principal residence in 1981 was financed in part by a loan due in 1984. This Court held that loan origination and discount points on a 30-year loan to refinance the short-term original loan were not deductible in the year the new loan was obtained because the proceeds of the new loan were not used "in connection with the purchase or improvement" of the taxpayers' residence, but rather were used to pay off a loan already in existence. Huntsman v. Commissioner, 91 T.C. at 920. The Court of Appeals for the Eighth Circuit reversed, holding that replacement of the short-term acquisition loan with a permanent mortgage is sufficiently in connection with the purchase of the home to fall within the exception provided by section 461(g)(2). Huntsman v. Commissioner, 905 F.2d at 1186. The facts of the instant case are distinguishable from *377 those in the Huntsman case, where the Court of Appeals concluded that obtaining the short-term financing was merely an integrated step in securing permanent financing to purchase the home. Huntsman v. Commissioner, 905 F.2d at 1185; [7]Kelly v. Commissioner, T.C. Memo. 1991-605. Here, the loan petitioner refinanced was a long-term permanent loan rather than short-term temporary financing. The record does not reflect the date petitioner obtained the original mortgage that he refinanced in 1986, but he acknowledged that, if the property had remained his principal residence, he would have continued with his original low-interest mortgage. Moreover, the refinancing of petitioner's mortgage was undertaken specifically because the property had ceased to be his principal residence. Under these circumstances, the Court holds that the new loan is not indebtedness incurred in connection with the purchase or improvement of petitioner's principal residence. Accordingly, the points petitioner paid in 1986 to acquire the new loan are not deductible under section 461(g)(2) and must be deducted in accordance with the general rule of section 461(a)(1). *378 Respondent's determination is sustained as to the loan discount and loan origination fee. Petitioner offered no authority for his position that the mortgage insurance premium paid in 1986 constituted prepaid interest deductible under section 461(g)(2). Respondent contends that the mortgage insurance premium is a capital expenditure that must be capitalized over the life of the loan. In Trivett v. Commissioner, T.C. Memo. 1977-161, affd. 611 F.2d 655 (6th Cir. 1979), an FHA mortgage insurance premium was held a capital expenditure which must be capitalized over the life of the loan. Petitioner *379 has shown no basis for distinguishing the mortgage insurance premium here from the one in the Trivett case. Furthermore, even if the mortgage insurance premium were deductible as prepaid interest, it would be subject to the same treatment under section 461(g)(1) as the discount and loan origination points and, therefore, would not be fully deductible in the year paid. Accordingly, respondent's determination with respect to the mortgage insurance premium is also sustained. Respondent determined additions to tax under section 6653(a)(1)(A) and (B) for the negligent or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Section 6653(a)(1)(A) applies if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) applies only to that portion of an underpayment attributable to negligence or intentional disregard of rules or regulations. Petitioner has satisfied the Court that the underpayment attributable to the hot *380 air balloon expenses is not attributable to negligence or intentional disregard of rules or regulations. Consequently, that portion of the underpayment is not subject to the addition to tax under section 6653(a)(1)(B). However, as to the underpayment attributable to the disallowed refinancing expenses, petitioner did not sustain his burden of proof, and, accordingly, respondent is sustained on the section 6653(a)(1)(A) addition as to the entire deficiency, and the section 6653(a)(1)(B) underpayment attributable to the disallowed refinancing expenses. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 1.274-2(e)(3)(i) and (iii), Income Tax Regs., state in relevant part: (i) In general. The phrase "expenditures with respect to a facility used in connection with entertainment" includes depreciation and operating costs, such as rent and utility charges (for example, water or electricity), expenses for the maintenance, preservation or protection of a facility (for example, repairs, painting, insurance charges), and salaries or expenses for subsistence paid to caretakers or watchmen. In addition, the phrase includes losses realized on the sale or other disposition of a facility. * * * * * * * (iii) Expenditures not with respect to a facility The following expenditures shall not be considered to constitute expenditures with respect to a facility used in connection with entertainment -- (a) Out of pocket expenditures↩. Expenses (exclusive of operating costs and other expenses referred to in subdivision (i) of this subparagraph) incurred at the time of an entertainment activity, even though in connection with the use of facility for entertainment purposes, such as expenses for food and beverages, or expenses for catering, or expenses for gasoline and fishing bait consumed on a fishing trip; 3. Prior to amendment in T.D. 8051, 1985-2 C.B. 88 (approved Aug. 5, 1985), adopted to conform the regulations to the amendments made to sec. 274(a)↩ by sec. 361 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2847, and sec. 103(a)(10) of the Technical Corrections Act of 1979, Pub. L. 96-222, 94 Stat. 194, 212, pursuant to which no deduction for expenditures paid or incurred after Dec. 31, 1978, with respect to an entertainment facility would be allowed, the heading for this section read "Expenditures with respect to entertainment facilities." 4. Cf. Ireland v. Commissioner, 89 T.C. 978, 984 n.11 (1987), wherein the Court declined to apply sec. 1.274-2(e)(2)(ii), Income Tax Regs.↩, providing that "A facility used only incidentally during a taxable year in connection with entertainment, if such use is insubstantial, will not be considered a 'facility used in connection with entertainment'" with respect to expenses paid or incurred after Dec. 31, 1978.
5. The Conference report accompanying amendments to sec. 274(a)(1)(B) in the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, states: Moreover, the deductions for otherwise allowable business entertainment activities and business meals are not affected by this legislation. For example, if a salesman took a customer hunting for a day at a commercial shooting preserve, the expenses of the hunt (such as hunting rights, dogs, a guide, etc.) would be deductible provided that the current law requirements of substantiation, adequate records, ordinary and necessary, directly related, etc., are met. However, if the hunters stayed overnight at a hunting lodge on the shooting preserve, the cost attributable to the lodging would be nondeductible but expenses for any meals would be deductible if they satisfied the requirements of current law. The shooting preserve should provide the taxpayer with an allocation of charges attributable to the overnight lodging for the taxpayer and guests. H. Conf. Rept. 95-1800 (1978), 1978-3 C.B. (Vol. 1) 585.↩
6. Sec. 461(g) was added to the Internal Revenue Code of 1954 by the Tax Reform Act of 1976, Pub. L. 94-455, sec. 208(a), 90 Stat. 1541. No regulations have been prescribed by the Secretary with respect to sec. 461(g).↩
7. The Court notes that the Eighth Circuit's opinion in Huntsman v. Commissioner, 91 T.C. 917 (1988), revd. 905 F.2d 1182 (8th Cir. 1990), is not binding in this case, which is appealable to the Court of Appeals for the Tenth Circuit. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).