T.C. Memo. 1998-307


UNITED STATES TAX COURT


WALTER J. PISZCZEK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14735-94.                    Filed August 24, 1998.


<u>Ronald O. W. Ylitalo</u>, for petitioner.

<u>William F. Hammack</u>, for respondent.


P, an airline pilot, spent several years and substantial sums attempting to develop a wind-powered distillery for the production of ethanol. For 1988 through 1990, P claimed research and experimentation deductions under sec. 174, I.R.C., in the amounts of $44,905, $14,894, and $13,780 respectively. R disallowed these deductions based on a determination that P did not expend these amounts in connection with a trade or business, since P lacked a profit objective. <u>Held</u>: P's wind-powered distillery activity was not profit motivated.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>: Walter J. Piszczek petitioned the Court to redetermine deficiencies in his 1988 through 1990 Federal income taxes, an addition to tax, and accuracy-related penalties as follows:

| Year | Deficiencies | Addition Sec. 6653(a) | Penalties Sec. 6662 |
|------|--------------|-----------------------|---------------------|
| 1988 | $15,910 | $796 | --- |
| 1989 | 6,207 | --- | $1,196 |
| 1990 | 5,310 | --- | 944 |

Respondent reflected these determinations in a notice of deficiency issued to petitioner on May 20, 1994.

We must decide the following issues:

1. Whether petitioner engaged in a Windmill Distillery activity with an actual and honest objective of making a profit. We hold he did not.

2. Whether petitioner is entitled to deduct certain other items in amounts greater than the amounts respondent determined were proper. We hold he is not.

3. Whether petitioner is liable for the addition to tax for negligence and accuracy-related penalties for negligence determined by respondent. We hold he is.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the exhibits submitted therewith are

incorporated herein by this reference. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Petitioner resided in Osceola, Wisconsin, when he filed the petition in this case. He was employed as a pilot for Northwest Airlines, flying out of Minneapolis, Minnesota, during the years in issue. Osceola, Wisconsin, is approximately 60 miles from Minneapolis, Minnesota.

Petitioner conceived the idea of a wind-powered distillery in 1977 to produce ethanol, an alcohol-based fuel. In 1980, he began his efforts to construct such a distillery on a parcel of land across the road from his residence. The only building permit petitioner has secured for the property in question is one which allows him to construct a single family residence. Petitioner has not sought permits from the Bureau of Alcohol, Tobacco and Firearms (ATF) to produce alcohol. ATF has informed petitioner that he may not commence alcohol production without ATF approval. Petitioner did not seek approval from the State of Wisconsin to store ethanol fuel on his property despite being informed by a State inspector that approval was required for underground storage tanks such as the ones he was maintaining on his property.

Petitioner has degrees in aeronautical engineering and law. He attended, but did not earn a degree from, Massachusetts

Institute of Technology, and was, at one time, employed as an engineer by the National Aeronautics and Space Administration.

For the period 1981 through 1994, petitioner has reported minimal income, and expenses approximating $225,000, in connection with his Windmill Distillery activity. He did not maintain a separate bank account for the activity.

Petitioner sought to determine the economic viability of his Windmill Distillery approach to producing ethanol by preparing a series of calculations based on data drawn from Government publications and other publicly available literature and by informally surveying local farmers about costs of "distressed corn" that he might use for feedstock. He also attempted to grow Jerusalem Artichokes in order to test their viability as a possible alternate feedstock. He concluded that with the proper facilities, he could produce alcohol at a cost of $1.04 per gallon. Petitioner never conducted any formal research as to the marketability of the product he hoped to produce or as to the cost and availability of necessary raw materials.

During the years petitioner worked on this project, his duties as an airline pilot generally required him to work 1-to 2-weeks at a time and allowed him to be off work during alternating 1- to 2-week periods. Petitioner's salary as a pilot for the years 1988 through 1990, was $133,117, $132,978, and $146,537, respectively. Petitioner devoted significant amounts of time to his Windmill Distillery activity during the years in issue.

Petitioner discussed his project with an architect, but did not retain him because the architect considered the project "too risky".  In 1977, petitioner had a patent lawyer conduct a patentability search relating to "contoured objects such as airfoils".  The attorney advised him that there were "several patents purportedly achieving similar results."  Following that consultation in 1977, petitioner did not contact any patent lawyer.

Through the end of 1994, the Windmill Distillery was not operational and had produced no alcohol.

For the years in issue, petitioner reported no gross income while claiming the following deductions related to his Windmill Distillery activity:

|  | 1988 | 1989 | 1990 |
| --- | --- | --- | --- |
| Research & development | $44,905 | $14,894 | $13,780 |
| Car & truck expense | 81 | --- | --- |
| Depreciation | 387 | 387 | 440 |
| Dues & publications | 80 | --- | --- |
| Insurance | 55 | 1,863 | --- |
| Legal & professional | 1,640 | 309 | --- |
| Office expense | 389 | 581 | --- |
| Allowable meals & entertainment | 9 | --- | --- |
| Postage | --- | 33 | 71 |

For 1988 through 1990, petitioner claimed business-related meal expenses in excess of employer reimbursements in the amounts of $609, $1,464 and $589 respectively.  Respondent allowed petitioner's meal expense deductions to the extent they were reimbursed.  Respondent disallowed the excess deductions.

For 1990, petitioner deducted eyeglass expense of $208 and an attorney license fee of $983 as unreimbursed employee business expenses.

OPINION

Wind-Powered Distillery Activity

The first issue for decision is whether petitioner is entitled to the deductions he claimed in 1989 through 1990 with respect to the wind-powered distillery project.   Petitioner must prove respondent's determination was in error.   Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).   Petitioner argues that he made the expenditures in connection with his trade or business of inventing, and therefore section 174 allows him to deduct them currently.   Respondent argues that none of the deductions claimed are allowable since petitioner failed to establish that any of the expenditures were made in connection with a trade or business.

In litigation concerning earlier tax years, petitioner was found to have carried on his Windmill Distillery activity without a profit objective.   Piszczek v. United States, 75 AFTR 2d 95-966, 95-1 USTC par. 80,185 (W.D. Wis. 1995), affd. in part, revd. and remanded in part on unrelated issue by unpublished order 76 AFTR 2d 95-7807, 96-1 USTC par. 50,016 (7th Cir. 1995). Petitioner has not substantially changed the way he conducts this activity so as to justify a contrary finding for the years in issue.

Under section 174, a taxpayer may deduct research or experimental expenditures. To be eligible to claim this deduction, the taxpayer must pay or incur the expenditures during the taxable year in connection with his or her trade or business. Sec. 174(a)(1). Furthermore, section 174 does not apply to expenses that are for acquiring or improving land or depreciable property even though the land or property is to be used in connection with a research or experimentation activity. Sec. 174(c).

The Supreme Court, in Snow v. Commissioner, 416 U.S. 500 (1974), clarified the meaning of the term "in `connection with his trade or business". In Snow, the Supreme Court compared the "in `connection with his trade or business * * *" language of section 174 with the "in carrying on a trade or business" language of section 162 (Emphasis added); the latter section allows an immediate deduction for ordinary and necessary business expenses. The Court concluded that in contrast with section 162, section 174 does not require that the taxpayer be currently producing or selling any product in order to claim a deduction.

Following Snow v. Commissioner, supra, this Court has held that the trade or business requirement is not eliminated under section 174. Rather, section 174 requires that the taxpayer's activities be aimed at engaging in a trade or business at some point. Green v. Commissioner, 83 T.C. 667, 686 (1984).

Petitioner contends that he entered into the Windmill Distillery activity for profit and should, therefore, be allowed

to deduct his expenditures currently. Respondent contends that petitioner lacked the necessary profit objective. Respondent further contends that even if petitioner engaged in the Windmill Distillery activity for profit, his expenditures were to acquire or improve land or depreciable property and, therefore, petitioner is not entitled to any deduction under section 174. Since we agree with respondent that petitioner did not engage in the activity for profit, we do not reach the question whether petitioner's expenditures were to acquire or improve land or depreciable property.

In determining whether an activity is engaged in for profit for purposes of section 174, courts have found it helpful to consider the regulations issued, and cases that have arisen, under section 183. See, e.g., Nickeson v. Commissioner, 962 F.2d 973 (10th Cir. 1992), affg. Brock v. Commissioner, T.C. Memo. 1989-641; Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724 (9th Cir. 1986), affg. T.C. Memo. 1984-472. The section 183 cases indicate that whether an individual engages in an activity for profit depends on whether he or she entertains an actual and honest profit objective in engaging in the activity. The taxpayer's expectations do not have to be reasonable or realistic, but simply honest. Burger v. Commissioner, 809 F.2d 355, 358 (7th Cir. 1987), affg. T.C. Memo. 1985-523. Whether a taxpayer conducts an activity with the requisite profit intent rests on the facts of the case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170

(9th Cir. 1981). "A taxpayer's mere statement of intent is given less weight than the objective facts of the case." Burger v. Commissioner, supra at 358.

In deciding whether an activity is engaged in for profit, we may take into account the following nonexclusive factors: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his or her adviser; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses in the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. None of these factors is dispositive, in and of itself, and a decision does not rest on the number of factors satisfied. Golanty v. Commissioner, supra at 426; sec. 1.183-2(b)(3), Income Tax Regs.

In applying these factors in the context of section 174, we are mindful that the taxpayer's current activities need only be aimed at enabling the taxpayer to engage in a trade or business "at some time". Green v. Commissioner, supra at 686. With that focus in mind, we will concentrate our analysis on the first five factors mentioned above and on factors eight and nine.

Petitioner contends he is in the trade or business of being an inventor. He argues, therefore, that the analysis of the

preceding factors should somehow be made differently in his case. However, petitioner has submitted no evidence that he holds or has applied for any patents or that he has ever developed for profit any new device, process, or technology aside from the Windmill Distillery activity in issue here. To prevail, petitioner must demonstrate an honest objective to profit by developing his Windmill Distillery.

We turn to a review of the relevant factors:

1. Manner in Which the Activity Is Conducted

Objective facts showing that a taxpayer carries on an activity in a businesslike manner indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs.

In several respects, petitioner did not conduct his activity in a businesslike fashion.

The only evidence that petitioner ever attempted to investigate the potential profitability of the venture consists of a series of calculations he did at one point which indicated that under some circumstances it would be possible to produce alcohol for fuel at a cost of $1.04 per gallon. In 14 years of increasingly heavy expenditures, there is no indication petitioner revisited those calculations in light of what he had learned from his endeavors. His investigation of costs for raw materials was sketchy and informal. Petitioner seems to have done little more than telephone a few local farmers at one point in this long-term project to find out the price at which distressed corn was then selling. Though costs of competing fuels

were constantly fluctuating, petitioner seems to have been indifferent to the realities of the marketplace.

Petitioner did not secure any of the required permits for the type of building he was constructing or the type of operation he was conducting.  Petitioner did not even take the minimal step of maintaining a separate bank account for this activity.

This factor does not support a conclusion that petitioner's activity was profit motivated.

2.  Expertise of Petitioner

We consider the expertise of petitioner and the professionals he consulted with respect to the technology he sought to develop and with respect to his prospects for doing so profitably.  Sec. 1.183-2(b)(2), Income Tax Regs; see Underwood v. Commissioner, T.C. Memo. 1989-625; Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987).

Petitioner had some relevant engineering experience, but he lacked the expertise he would need to turn a workable device into a commercially viable venture.  He did not consult with professional advisers who would have been able to fill in the gaps in his knowledge.

This factor does not support a conclusion that petitioner's activity was profit motivated.

3.  Time and Effort Spent in Conducting the Activity

The fact that a taxpayer devotes much of his or her own time to an activity may indicate a profit objective if the activity

does not have a substantial element of recreation. The failure of a taxpayer to devote substantial time to an activity may weigh against a profit objective, unless, for example, the taxpayer employs capable personnel to conduct the activity in his or her stead. Sec. 1.183-2(b)(3), Income Tax Regs.

As an airline pilot working 1- to 2-weeks on and then 1- to 2-weeks off, petitioner had substantial blocks of time available to devote to his Windmill Distillery activity. He testified that at certain points he "tried" to spend 35 to 40 hours a week on the project, although he did not state how much time he actually spent. At certain points, he retained construction crews and other workmen whose activities he oversaw. Overall, it appears petitioner devoted significant amounts of time and energy to his project. This factor supports a conclusion that petitioner's activity was profit motivated.

## 4. Expectation That the Assets Will Appreciate in Value

The term "profit" includes the appreciation in the value of assets used in an activity. Sec. 1.183-2(b)(4), Income Tax Regs. Petitioner has not established that he expected the assets he used or created to increase in value so as to produce an overall profit. This factor does not support a conclusion that petitioner's activity was profit motivated.

## 5. Taxpayer's Success in Similar or Dissimilar Activities

Although an activity is unprofitable, we may take into account whether the taxpayer previously converted similar activities from unprofitable to profitable enterprises. Sec.

1.183-2(b)(5), Income Tax Regs. There is no evidence petitioner had previously engaged in the business of developing or profitably exploiting new technologies of the sort involved in this matter.

This factor does not support a conclusion that petitioner's activity was profit motivated.

8 & 9. Financial Status of Taxpayer and Elements of Personal Pleasure

Substantial income from sources other than an activity, particularly if the activity's losses generated substantial tax benefits, may indicate that the activity is not engaged in for profit. This is especially true where there are personal or recreational elements involved. Sec. 1.183-2(b)(8) and (9), Income Tax Regs. Petitioner's average salary as a pilot for the period 1988-90 was over $137,500. During the first 14 years of the project, petitioner's outlays were approximately $16,000 a year, approximately 11 percent of his earnings for the years in issue. This is not out of line with what a person in petitioner's income bracket might spend on a hobby or recreational activity. Petitioner was driven more by a desire to satisfy his intellectual curiosity and to vindicate his theories than by the potential for deriving a profit. Thus there is a considerable element of personal pleasure or satisfaction in petitioner's efforts.

These factors do not support a conclusion that petitioner's activity was profit motivated.

Conclusion

On the basis of our discussion above, we conclude that petitioner engaged in his Windmill Distillery activity without an actual and honest objective of making a profit.  In light of our conclusion that taxpayer did not have sufficient profit motive to satisfy the requirements of section 174, we also conclude he did not meet the requirements of section 162 and may not deduct amounts he claimed as ordinary and necessary business expenses in connection with his Windmill Distillery activity.

Other Disallowed Deductions, Additions to Tax, and Penalties

Petitioner presented no evidence at trial and made no arguments in his brief with respect to respondent's disallowance of deductions for meal expenses, eyeglasses, and the attorney licensing fees.  Similarly, at trial and on brief, petitioner did not address the 1988 addition to tax for negligence or the 1989 and 1990 accuracy-related negligence penalties.  The burden of proof is on petitioner to show that respondent's determinations set forth in her notice of deficiency are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. at 115.  Petitioner has not met his burden with respect to these issues; accordingly we affirm respondent's determinations.

Decision will be
entered for respondent.