T.C. Summary Opinion 2001-87


UNITED STATES TAX COURT


TOD McMULLEN AND ROBBIN EVERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12373-99S.                    Filed June 13, 2001.


Tod McMullen and Robbin Everson, pro sese.

<u>G. Michelle Ferreira</u>, for respondent.


        CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the year in issue.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined a deficiency of $5,920 in petitioners' 1995 Federal income tax. The issue for decision is whether petitioners are entitled to various deductions claimed on a Schedule C, Profit or Loss From Business, included with their 1995 Federal income tax return.

Background

Some of the facts have been stipulated and are so found. Petitioners are husband and wife. They filed a timely 1995 joint Federal income tax return. At the time the petition was filed, petitioners resided in Alameda, California. References to petitioner are to Tod McMullen.

On June 25, 1984, petitioner applied for a United States patent for an auxiliary or secondary oil filtration system for automobile internal combustion engines (the system). His application was approved and he was issued a patent on December 31, 1985. During 1985, petitioner consulted with a professional income tax return preparer and was advised in a letter dated August 9, 1985, how expenditures made in connection with the patent process could be treated for Federal income tax purposes.

Petitioner unsuccessfully attempted to license the patent to the Amway Corporation in 1986. Sometime thereafter, petitioner decided to manufacture and market the system. The amount of time and effort petitioner devoted to this pursuit over the years is

not entirely clear. It appears that petitioner's marketing efforts consisted primarily of promoting the system through "word of mouth" advertising. Petitioner tested the system by installing it in his vehicles. It appears that there were relatively few sales from the date of the patent through the year in issue.

After the patent was issued in 1985, petitioner made some changes to the system. Prior to 1995, petitioner adapted the system for use in automobile hydraulic power steering systems and automobile automatic transmissions. In 1992, or thereabouts, petitioner began to develop what he described as "curious motor oils" or "teflon particle saturated oils" for use with the system. According to petitioner, if a motorist used the system and one of the motor oils that he claims to have developed, oil changes would be virtually eliminated.

Robbin Everson was a salesperson for Mary Kay Cosmetics, Inc. during the year in issue. In 1993, as a salesperson for that company, she was provided with a new, 1993 Pontiac Grand Am, leased for a 2-year period on her behalf by the company, at the company's expense. Upon the expiration of the lease in 1995, petitioners were entitled to purchase the car, which they did for $7,836. During 1995, petitioners also purchased a computer

printer for $287 and a 1972 Dodge van[1].

Petitioners' 1995 joint Federal income tax return was timely filed. Petitioners did not elect to itemize deductions for 1995. Included with that return is a Schedule C for petitioner's business, identified as Micron Systems. The primary business of Micron Systems is described on the Schedule C as "developing/improving patentable products". The following items are reported on the Schedule C:

Income

| | |
|---|---|
| Gross receipts | $492 |
| Returns/allowances | 330 |
| Cost of goods sold | 3,502 |
| Gross income | (3,340) |

Deductions

| | |
|---|---|
| Advertising | $320 |
| Car and truck | 1,264 |
| Depreciation/sec. 179 expense deduction | 10,312 |
| Insurance | 533 |
| Office | 1,565 |
| Rent/lease | 3,240 |
| Supplies | 1,008 |
| Taxes/licenses | 60 |
| Meals/entertainment | 641 |
| Utilities | 181 |
| Other | 1,020 |
| Total expenses | 20,144 |
| Net Loss | 23,484 |

---

[1] According to the Form 4562, Depreciation and Amortization, included with petitioners' 1995 joint Federal income tax return, the cost of the van was $2,189. According to the parties' stipulation, the cost of the van was $952.

The deduction for advertising relates to expenditures for 35mm film, film processing, and photocopying.  The deduction for car and truck expenses relates to mileage driven on a 1993 Mazda MPV, the cost of which was deducted in a prior year under section 179.  The depreciation and section 179 deduction includes the costs of the 1993 Pontiac Grand Am, the 1972 Dodge Van, and the computer printer.  The deduction for insurance relates to automobile insurance on petitioners' automobiles.  The deduction for office expense includes expenditures for magazine and newspaper subscriptions.  The deductions for rent and utilities relate to home office expenses.  The deduction for taxes and licenses relates to registration fees for petitioners' automobiles.  The deduction for other expenses relate to the cost of driving the Mazda MPV on a trip described by petitioner as follows:

> It was a scenic trip, San Diego [where petitioners lived at the time], customer in Bakersfield, customer in - - no, that was it, the guy was in Bakersfield. The guy that had been a diesel engine rebuild mechanic who gave us a great reference.  He was in -- he was moving to Iowa, so I outfitted him, and that was in part of the gross sales -- no, wait, I -- he didn't have any money, so I sold it to him on credit and never collected, come to think of it.

The net loss claimed on the Schedule C offset other income reported on petitioners' return.

In the notice of deficiency, respondent disallowed the deduction for the net loss.

Discussion

Petitioners claim they are entitled to a deduction for the net loss reported on the Schedule C under the authority of either section 162 or section 174. In general, a taxpayer is entitled to deductions for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Sec. 162(a). Furthermore, a taxpayer is generally entitled to deductions for research and experimental expenditures paid or incurred during the taxable year "in connection with" the taxpayer's trade or business. Sec. 174(a). A taxpayer who claims a deduction under either section must be engaged in a trade or business. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Green v. Commissioner, 83 T.C. 667, 686-687 (1984). Respondent argues that petitioner was not engaged in a trade or business during 1995. For the following reasons, we agree with respondent.

Although the term "trade or business" is not specifically defined in the Internal Revenue Code, "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, supra at 35. A sporadic activity does not qualify as a trade or business. See id.; see also Green v. Commissioner, supra at 686-687. We assume, without finding,

that petitioner intended to profit from the development and subsequent sales of the system and related products.  See, e.g., Snow v. Commissioner, 416 U.S. 500 (1974); Louw v. Commissioner, T.C. Memo. 1971-326.  Nevertheless, petitioners failed to establish that, with respect to Micron Systems, petitioner engaged in any activity with regularity and continuity during 1995 so as to consider the activity a trade or business for purposes of section 162 or 174 for that year.

The operation of petitioners' vehicles in which the system had been installed, in and of itself, does not support the deductions here in dispute.  Otherwise, petitioners provided little detail of what petitioner was doing on a day-by-day basis during the year in issue.  We cannot determine whether he was actively involved in any research and development or manufacturing and marketing during that year.  Petitioner explained that prior to 1995 he decided to manufacture and market the system himself after unsuccessfully attempting to license it, but there is no evidence that petitioner manufactured anything during 1995, and, other than his generalized testimony on the point, there is no evidence that he was otherwise researching or developing any products for sale or patents during that year.  Based upon the negligible gross receipts for the year in issue, it also appears that petitioner made very little attempt to sell

anything.[2]  See <u>Bendetovitch v. Commissioner</u>, T.C. Memo. 1993-443.

As evidence of his sales efforts, petitioner provided numerous testimonial type letters to petitioner regarding Micron Systems.  However, none relate to the year 1995.[3]

Furthermore, focusing on each deduction provides no meaningful insight into the nature of petitioner's activities during 1995.  At trial, petitioners conceded that they were not entitled to some of the deductions.  Some of the deductions not conceded could not be explained; others relate to expenses that would have otherwise been incurred regardless of the activity.

We understand that 10 years prior to the year in issue, petitioner obtained a patent on the auxiliary oil filtration system for internal combustion engines.  We think it likely that petitioner intended to make a profit from it someday.  However, petitioners failed to explain, and we cannot devine, what petitioner was doing in 1995 that would entitle them to the

---

[2] We cannot determine the source of the gross receipts reported on the Schedule C.

[3] One letter dated March 31, 1999, addressed to petitioner at his home address is prepared on letterhead of Compuware, Oakland, California, and signed by Robbin Everson, one of the petitioners in this case.  The subject of this letter is petitioners' 1993 Pontiac Grand Am.  Another letter was written by a service manager of SuperShuttle in 1991.  Petitioner discontinued his relationship with SuperShuttle in 1994.

deductions claimed on the Schedule C.  See <u>Karara v. Commissioner</u>, T.C. Memo. 1999-253, affd. without published opinion 214 F.3d 1358 (11th Cir. 2000).  It follows that respondent's disallowance of the loss that results from those deductions is sustained, and we so hold.

Reviewed and adopted as the report of the Small Tax Case Division.

Based on the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.