T.C. Memo. 2000-195


UNITED STATES TAX COURT


NORMAN H. FAWSON AND MARY JANE B. FAWSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7705-99.                    Filed June 28, 2000.


<u>Bruce E. Babcock</u>, for petitioners.

<u>Richard W. Kennedy</u>, for respondent.


MEMORANDUM OPINION

DEAN, <u>Special Trial Judge</u>:  Respondent issued a notice of

deficiency to petitioners for taxable year 1982.  In the notice,

respondent determined that petitioners were liable for additions

to tax for negligence pursuant to section 6653(a)(1)[1] of $509.75

and pursuant to section 6653(a)(2) for 50 percent of the interest

_____

   [1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

due on $10,195. Respondent also determined an addition to tax of $2,548.75 for a substantial understatement of tax under section 6661.

Petitioners did not contest and have conceded the addition to tax for a substantial understatement. The issue for decision is whether petitioners are liable for the additions to tax for negligence pursuant to section 6653(a)(1) and (2) with respect to the loss from their investment in the Utah Jojoba I Research partnership claimed on their 1982 Federal income tax return.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners resided in St. George, Utah, at the time their petition was filed.

## Background

Norman Fawson (petitioner) has a degree in genetics and a medical degree from the University of Utah. He practices family medicine with a medical group in St. George, Utah. He grew up on a farm, and in 1979 he purchased approximately 15 acres and started an apple orchard.

In 1982 petitioners' financial planner/investment counselor, Elroy Jones (Mr. Jones), recommended that petitioners invest in the Utah Jojoba I Research partnership (the partnership). Over the previous 2 or 3 years, Mr. Jones had set up an investment plan for petitioners' retirement, and petitioners had purchased

one or two investments through Mr. Jones.  As an officer of and participant in the retirement plan sponsored by his medical partnership (the retirement plan), petitioner also had participated in other investments recommended and sold by Mr. Jones.

The partnership was promoted by the CFS Corp. (CFS), through which petitioners and the retirement plan had made several investments.  CFS was highly recommended by the attorney who oversaw the retirement plan.  Petitioners also had made investments in real estate limited partnerships through this attorney.

Petitioners discussed the partnership investment opportunity with Mr. Jones.  In addition to information provided by Mr. Jones, petitioner had discovered, while investigating drip irrigation for his apple orchard, that farmers in Israel were already researching jojoba as an alternative source to sperm whale oil and had already started jojoba plantations.  Petitioner also read what he could find at the library to become acquainted with jojoba.

Mr. Jones gave petitioners a private placement memorandum which they read and discussed with him.  One of the features of the investment was that it would generate substantial tax deductions.  The promotional materials petitioners reviewed indicated that there were tax risks associated with the

investment. Petitioners felt reassured about the tax risks after talking with Mr. Jones. They also were reassured after talking with someone from CFS. Petitioners did not explain the substance of the reassuring statements made by Mr. Jones or by CFS.

Petitioners did not discuss the investment with an attorney. Although petitioner does not recall whether he had their accountant review the private placement offering before making the investment, petitioners did discuss the partnership with him after making the investment.

On their joint 1982 Federal income tax return, petitioners reported wages from petitioner's medical practice of $123,455 and losses of $20,919 from the Utah Jojoba I Research partnership. The partnership was audited and a Notice of Final Partnership Administrative Adjustment was issued to the partnership. The partnership initiated a TEFRA proceeding to contest the matter. The matter was resolved by Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, which found that the activities of the partnership did not constitute a trade or business and that the agreements between the partnership and U.S. Agri Research & Development Corp. (U.S. Agri) had been designed and entered into solely to provide a mechanism to disguise the capital contributions of limited partners as currently deductible expenditures.

As a result of the partnership's TEFRA proceeding, petitioners were assessed a tax liability of $10,195, along with interest. Respondent issued a notice of deficiency for affected items determining that petitioners are liable for additions to tax for negligence pursuant to section 6653(a)(1) and (2) and for a substantial understatement addition to tax pursuant to section 6661. Petitioners timely filed a petition seeking a redetermination of the negligence additions to tax.

## Discussion

Section 6653(a)(1) imposes an addition to tax in an amount equal to 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes another addition to tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Respondent's determinations, contained in the notice of deficiency, are presumed correct, and petitioners must establish otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); cf. sec. 7491(c).[2] Respondent maintains that

---

[2] The Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 685, 726, added sec. 7491(c), which shifts the burden of proof to the Secretary with respect to a taxpayer's liability for penalties and additions to tax in court proceedings arising in connection with examinations commencing after July 22, 1998. Petitioners do not

(continued...)

petitioners' underpayment was due to negligence. Petitioners, therefore, have the burden of proving they were not negligent in deducting their share of the partnership's losses. See <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 663 (1975), affd. 566 F.2d 2 (6th Cir. 1977); <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791 (1972); <u>Anderson v. Commissioner</u>, T.C. Memo. 1993-607, affd. 62 F.3d 1266 (10th Cir. 1995).

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under like circumstances. See <u>Anderson v. Commissioner</u>, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607; <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985); <u>Glassley v. Commissioner</u>, T.C. Memo. 1996-206. The focus of our inquiry is on the reasonableness of the taxpayer's actions in light of his experience and the nature of the investment. See <u>Henry Schwartz Corp. v. Commissioner</u>, 60 T.C. 728, 740 (1973); <u>Greene v. Commissioner</u>, T.C. Memo. 1998-101, affd. without published opinion 187 F.3d 629 (4th Cir. 1999); <u>Glassley v. Commissioner</u>, <u>supra</u>; <u>Turner v. Commissioner</u>, T.C. Memo. 1995-363. Whether a taxpayer is negligent in claiming a tax deduction "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction." <u>Sacks v. Commissioner</u>, 82 F.3d

---

[2](...continued)
contend that their examination commenced after July 22, 1998, or that sec. 7491 is applicable to them.

918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217; see <u>Greene v. Commissioner</u>, <u>supra</u>.

A taxpayer may avoid liability for negligence penalties under some circumstances if the taxpayer reasonably relied on competent professional advice. See <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other issue 501 U.S. 868 (1991). Such reliance, however, is "not an absolute defense to negligence, but rather a factor to be considered." <u>Id.</u> For reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the taxpayer must show that the professional adviser had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. See <u>id.</u>

The record does not establish the exact nature of the underlying partnership investment in this case. No prospectus or private placement memorandum was produced, few facts on the exact nature of the investment were stipulated, and no witnesses other than petitioner testified at trial. Nevertheless, a fair reading of the stipulation of facts and the briefs of the parties shows that they agree that the underlying facts of the partnership operations are as discussed in <u>Utah Jojoba I Research v.</u>

Commissioner, T.C. Memo. 1998-6.[3]  See Greene v. Commissioner, supra.  It is petitioners' burden, in any event, to establish the context in which their deductions were taken.  See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

In Utah Jojoba I Research v. Commissioner, supra, we found that the partnership was organized on December 27, 1982, as a limited partnership with a described purpose of conducting research and development (R&D) involving the jojoba plant.  CFS prepared the private placement memorandum (the offering) dated November 10, 1982, and an R&D agreement and licensing agreement executed on December 31, 1982.  The partnership was formed with subscriptions for 247 units for a total capitalization of $2,094,560.

The offering identified William G. Kellen as the general partner and characterized him as having "no previous experience" with respect to jojoba beans.  The offering also indicated that

---

[3]  Although the parties disagree as to what was apparent from the partnership's promotional materials, they have stipulated that the Court found in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, that the activities of the partnership did not constitute a trade or business and that the research and development and licensing agreements entered into by the partnership had been designed and entered into solely to provide a mechanism to disguise the capital contributions of limited partners as currently deductible expenditures.  In their brief, petitioners request a finding of fact that the Court's decision found that the activities of the partnership did not constitute a trade or business.

U.S. Agri was the contractor selected to carry out the R&D program under an R&D agreement. The offering included the R&D agreement and the license agreement.

The partnership entered into the exclusive R&D agreement with U.S. Agri on December 31, 1982. The license agreement between the partnership and U.S. Agri was executed concurrently with the R&D agreement, granting U.S. Agri the exclusive right to utilize technology developed for the partnership for 40 years in exchange for a royalty of 85 percent of all products produced.

The R&D agreement, according to its terms, expired upon the partnership's execution of the license agreement. Because the two agreements were executed concurrently, amounts paid to U.S. Agri by the partnership were not paid pursuant to a valid R&D agreement but were passive investments. The partnership never engaged in research or experimentation either directly or indirectly.

We noted that Mr. Kellen exhibited a lack of concern about the details of the partnership's operations. He hastily signed the R&D agreement and licensing agreement prepared by CFS and admitted he did not read the offering until preparing the case for trial. Mr. Kellen also never took any legal action to enforce promissory notes signed by limited partners who had purchased subscriptions in the partnership and defaulted.

We found in Utah Jojoba I Research v. Commissioner, supra,

that U.S. Agri's attempts to farm jojoba commercially did not constitute research and development.  We concluded that the R&D agreement was designed and entered into solely to decrease the cost of participation in the jojoba farming venture for the limited partners through large up-front deductions for expenditures that were in reality capital contributions.  We further found that the partnership was not involved in a trade or business and had no realistic prospect of entering into a trade or business with regard to any technology that was supposed to be developed by U.S. Agri.  On these bases, we determined that the partnership was not entitled to a claimed loss of $1,304,819, including $1,298,627 claimed as qualified research and experimental expenditures under section 174.

Petitioners contend that they invested in the partnership and claimed losses arising out of the partnership in a good faith belief that the partnership had the potential to earn a profit. They contend they exercised the due care of reasonable and ordinarily prudent persons under the circumstances, taking into account their experience and the nature of the investment.  They further argue that at the time they claimed the deductions at issue the law relating to the deductibility of research and development expenses under section 174 was still unclear and that there were no warning signs that they would not be entitled to the claimed deduction.  We, however, do not find that the

evidence supports the conclusion that petitioners acted reasonably under the circumstances.

In contrast to many of the cases decided by this Court involving tax shelters in which the impropriety of partnership deductions could be discerned only by an investigation of the partnership's actual operations, the problem with Utah Jojoba I Research was apparent from the documents included in the offering prepared by CFS. Both the R&D agreement and the licensing agreement were included in the offering. An experienced attorney capable of reading and understanding these documents should have understood the legal ramification of the licensing agreement canceling the R&D agreement. With the concurrent execution of the two agreements, the partnership was not engaging, even indirectly, in any research or experimentation. Instead, the partnership was merely a passive investor seeking royalty returns pursuant to the licensing agreement.

Rather than seeking professional legal and tax advice,[4] petitioners relied solely on their reading of the offering, their discussions with Mr. Jones, who was selling the investment, their discussion with someone from CFS, which was promoting the investment, and petitioner's reading about jojoba. The record

---

[4] Petitioner testified that he discussed the investment with his accountant "at least after the investment was made". He did not indicate, however, what information he shared with the accountant or the exact nature of any advice he received.

provides no information about Mr. Jones' background and expertise, other than that he helped petitioners prepare their retirement plan.  Although petitioner testified he felt reassured about any tax risks after talking with Mr. Jones and someone from CFS, he did not elaborate on what he was told or why he felt reassured.

Petitioners were not naive investors and should have recognized the need for independent professional advice.  See LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. in part without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Glassley v. Commissioner, T.C. Memo. 1996-206.  Petitioner apparently recognized the necessity of such advice in connection with the investments of his medical group's retirement plan.  He and his medical partners hired an attorney to oversee the retirement plan's investments.  In the case at hand, however, petitioners relied on the assurances of Mr. Jones even though petitioner testified he was not clear about the "legalese" in the offering and that the offering had put him on notice of tax risks.

Furthermore, petitioners should have had reason to question Mr. Jones' representations.  Petitioner testified that Mr. Jones had indicated that he had met with Mr. Kellen, the partnership's general partner, and that Mr. Kellen had significant experience

in the research and development of jojoba. In contrast, the offering, which petitioner testified he read, characterized Mr. Kellen as having no experience in the research and development of jojoba.

Petitioner seemingly contends that his experience with farming and his reading about jojoba gave him confidence in the viability of his investment in the partnership, yet he presented no evidence that he actually applied any of his knowledge through an investigation of the partnership. If anything, petitioner's knowledge should have prompted him to inquire into the operational aspects of the partnership and into the nature of the "research" U.S. Agri was to conduct under the terms of the R&D agreement. The record provides no evidence that petitioner ever visited the jojoba plantation or inquired into U.S. Agri's ability to conduct research. If petitioner had investigated the nature of the purported research U.S. Agri was to conduct, he likely would have discovered that it amounted to nothing more than farming activity. With petitioner's farming background and his professed interest in jojoba, we find it difficult to believe he would have relied solely on the promoter's investigation if he viewed the partnership as a long-term investment.[5]

Petitioners' contention that they were not negligent in

---

[5] We note that petitioner went to Israel to investigate drip irrigation for his own apple orchard.

claiming losses associated with the partnership because the limits of section 174 on the deductibility of research or experimental expenditures had not been sufficiently developed in 1982 is without merit.  Petitioners cite Kantor v. Commissioner, 998 F.2d 1514 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380, in support of their proposition.  In Kantor, the Court of Appeals for the Ninth Circuit concluded that the experience and involvement of the general partner and the lack of warning signs could have reasonably led investors to believe they were entitled to deductions in light of the undeveloped state of the law regarding section 174.

As explained by the Court of Appeals, the Supreme Court's decision in Snow v. Commissioner, 416 U.S. 500 (1974), left unclear the extent to which research must be "in connection with" a trade or business for purposes of qualifying for an immediate deduction under section 174.  In the present case, however, not only was the partnership not engaged in a trade or business, it was not conducting, directly or indirectly, any research or development.

Petitioners' investment in the partnership is further distinguishable from the taxpayers' investment in Kantor v. Commissioner, supra.  The general partner of Utah Jojoba I Research was not experienced in jojoba research and development, and he had minimal involvement in the partnership.  Petitioners

should have recognized additional warning signs including the offering's warnings of tax risks involved with the investment and the terms of the licensing agreement which canceled the R&D agreement.

Petitioners did not exercise the due care of reasonable and ordinarily prudent persons under the circumstances. Accordingly, we hold that petitioners are liable for the negligence additions to tax imposed by the provisions of section 6653(a)(1) and (2).

To reflect the foregoing,

Decision will be entered

for respondent.